933 F.2d 1207
 Constance B. FOSTER, Insurance Commissioner of the
Commonwealth of Pennsylvania, as Rehabilitator of
the Mutual Fire, Marine & Inland Insurance Company,
v.
CHESAPEAKE INSURANCE COMPANY, LTD., Appellant.
 No. 90-1752.
 United States Court of Appeals,
Third Circuit.
 Argued April 15, 1991.
Decided May 20, 1991.
 
 David M. Zensky (Argued), Steven M. Pesner, Anderson, Kill, Olick & Oshinsky, New York City, Daniel Segal, Charles F. Forer, Hangley, Connolly, Epstein, Chicco, Foxman & Ewing, Philadelphia, Pa., for appellant.
 Gaetan J. Alfano (Argued), Gregory P. Miller, Ann Krasnowiecki, Miller, Alfano & Raspanti, Philadelphia, Pa., for appellee.
 Before STAPLETON, GREENBERG, and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 GREENBERG, Circuit Judge.
 
 
 1
 The appeal in this diversity of citizenship, breach of contract case, primarily involves the interplay between a contract's forum selection clause and 28 U.S.C. Sec. 1447(c) governing remand upon removal.[1] The district court determined that: (1) a motion to remand based on a such a clause is not governed by the 30-day time limit imposed on motions for remand by section 1447(c); (2) such a clause is a permissible ground for remand; (3) the clause in this case waived the right of removal; and (4) the clause is enforceable. The district court therefore remanded the case to the state court in which it had been commenced. We determine that we have jurisdiction over this appeal, and that the district court's several rulings were correct.
 
 I.
 FACTS AND PROCEDURAL HISTORY
 
 2
 In July 1982, Mutual Fire, Marine and Inland Insurance Company, a company organized and licensed under the laws of Pennsylvania, entered into a reinsurance agreement with defendant-appellant Chesapeake Insurance Company, Ltd., a Bermuda-based corporation. The agreement--or "treaty"--provided that Mutual Fire would "cede" to Chesapeake, and others, a portion of the risk that it, Mutual Fire, bore on its policies; Chesapeake would bear the cost of that risk once it became an actual liability; and for this Mutual Fire would pay premiums to Chesapeake. Mutual Fire entered into so many similar treaties that by the mid-1980's between 60% and 70% of its business entailed reinsurance, involving over 8,000 treaties with various insurers worldwide. The agreement between Mutual Fire and Chesapeake included the forum selection clause in issue here which required Chesapeake at Mutual Fire's request in the event of certain disputes to "submit to the jurisdiction of any court of competent jurisdiction within the United States."[2]
 
 
 3
 These reinsurance treaties were apparently disadvantageous to Mutual Fire as it became insolvent, partly, it is alleged, due to the refusal of reinsurers like Chesapeake to pay their share of losses to Mutual Fire.[3] Accordingly, the Pennsylvania Insurance Commissioner (now plaintiff-appellee Constance B. Foster) took over Mutual Fire, and, on December 8, 1986, the Commonwealth Court of Pennsylvania appointed the commissioner Rehabilitator. Because one of Foster's duties as Rehabilitator is to marshal Mutual Fire's assets, she commenced this suit against Chesapeake in the Commonwealth Court seeking the monies allegedly owed by it to Mutual Fire under the agreement. Chesapeake is said to be in breach of its agreement with Mutual Fire in an amount in excess of $4,000,000.
 
 
 4
 On October 18, 1989, there being diversity of citizenship and an adequate amount in controversy to support district court jurisdiction, Chesapeake--in a manner which was timely and without procedural defect--removed this suit to the United States District Court for the Eastern District of Pennsylvania, but on December 11, 1989--the 54th day after the notice of removal was filed--, Foster moved to remand the case to the Commonwealth Court.
 
 
 5
 The district court granted the motion in an oral opinion, first holding that section 1447(c) did not bar the motion as untimely. That section provides, in part:
 
 
 6
 A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.
 
 
 7
 Then holding that the grounds for remand specified by section 1447(c) were not exclusive, and that waiver of the right to remove constituted a proper ground for remand, the court found that Chesapeake had waived its right to remove pursuant to the forum selection clause in its agreement with Mutual Fire. Finally, holding that the clause was enforceable, the district court ordered the case remanded by order of September 27, 1990. This appeal followed and the district court has stayed its order of remand pending appeal.
 
 II.
 DISCUSSION
 A. Appellate Jurisdiction
 
 8
 Although the parties in their original briefs contended that this court has jurisdiction over the appeal from the district court's order of remand under 28 U.S.C. Sec. 1291, we sua sponte ordered supplemental briefing on this issue in light of 28 U.S.C. Sec. 1447(d), which provides, in part: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise...."[4] Having reviewed the supplemental submissions and the authority cited therein, we determine that we have jurisdiction over this appeal.
 
 
 9
 The Supreme Court in Thermtron Products, Inc. v. Hermansdorfer, 423 U.S. 336, 96 S.Ct. 584, 46 L.Ed.2d 542 (1976), held that an order remanding a case for reasons not mentioned in the statute governing removal upon remand, 28 U.S.C. Sec. 1447(c), is reviewable. In Thermtron, the district court remanded a properly removed diversity case because of the crowded state of its docket, an action the court of appeals held on an application for a writ of mandamus or prohibition unreviewable because of section 1447(d). The Supreme Court, however, held that subsections (c) and (d) of section 1447 are in pari materia and must be read accordingly. "This means that only remand orders issued under Sec. 1447(c) and invoking the grounds specified therein ... are immune from review under Sec. 1447(d)." 423 U.S. at 346, 96 S.Ct. at 590. Thus, whereas section 1447(c) then specified as grounds for remand that "the case was removed improvidently and without jurisdiction," and whereas the district court had remanded for a reason not mentioned by section 1447(c), the Court held that review of the order of remand was not barred by section 1447(d). The Court then reversed the judgment of the court of appeals, and remanded the case to that court for it to issue a writ of mandamus "to prevent nullification of the removal statutes by remand orders resting on grounds having no warrant in the law." 423 U.S. at 353, 96 S.Ct. at 594.
 
 
 10
 Accordingly, while section 1447(d) was intended "to prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues," 423 U.S. at 351, 96 S.Ct. at 593--and the district court is therefore given the last word on whether it has jurisdiction to hear the case--, that policy does not apply when the district court has reached beyond jurisdictional issues or issues of defective removal, and has remanded for other reasons. Accordingly, the order of remand here, based on the forum selection clause in the contract between Mutual Fire and Chesapeake, is not rendered unappealable by section 1447(d). In the words of another court of appeals that has considered this issue:
 
 
 11
 [W]here a district court bypasses the jurisdictional arguments and reaches the merits of a contract dispute, the policy [behind section 1447(d) ] is inapplicable. Any delay caused by an appeal of the contract issue is a delay that must be countenanced. To apply section 1447(d) to the district court's decision on the enforceability of the forum selection clause would extend the scope of section 1447(d) far beyond its intended parameters and would leave matters of substantive contract law unreviewable. We refuse to impute such an intent to Congress.
 
 
 12
 Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d 273, 277 (9th Cir.1984).
 
 
 13
 In a similar vein, the Court of Appeals for the Sixth Circuit has stated, in a case also involving remand due to a forum selection clause: "[A] remand order is reviewable on appeal when it is based on a substantive decision on the merits of a collateral issue as opposed to just matters of jurisdiction." Regis Associates v. Rank Hotels (Management) Ltd., 894 F.2d 193, 194 (6th Cir.1990). See also Clorox Co. v. United States District Court for the Northern District of California, 779 F.2d 517, 520 (9th Cir.1985) (same; reviewing on appeal remand due to claimed waiver of removal); In re Delta America Re Ins. Co., 900 F.2d 890, 892 (6th Cir.1990) (following Regis; reviewing on appeal remand due to forum selection clause after removal by retrocessionaire); Karl Koch Erecting Co. v. New York Convention Center Dev. Corp., 838 F.2d 656, 658 (2d Cir.1988) (same; reviewing on appeal remand due to forum selection clause).[5]
 
 
 14
 Furthermore, an order remanding a case pursuant to a forum selection clause is "final" for the purposes of 28 U.S.C. Sec. 1291 under the collateral order doctrine as it conclusively determines a disputed issue wholly separate from the merits of the litigation, i.e., the legal construction of the clause; it ends the litigation in the federal forum, amounting to a dismissal since its purpose and effect is to surrender jurisdiction to the state court; and if not appealable now the order will be unreviewable. See Pelleport, 741 F.2d at 278.
 
 
 15
 Accordingly, 28 U.S.C. Sec. 1447(d) does not bar review of the order of the district court remanding this case to the Commonwealth Court, and that order is considered "final" so as to vest this court with jurisdiction to hear this appeal under 28 U.S.C. Sec. 1291.[6]B. The 30-day Time Limit of Section 1447(c)
 
 
 16
 Foster's motion to remand--made on the 54th day after the notice of removal was filed--was predicated on two grounds: first, that the district court should abstain from hearing the case, and, second, Chesapeake had waived its right to remove by executing the agreement with the forum selection clause. The district court decided the matter solely on the basis of the clause. The parties agree that a stipulation into which they entered before the district court did not address the timeliness of Foster's motion as it merely gave Foster more time to move for remand due to defective removal. Chesapeake claims that the motion for remand was untimely under section 1447(c). That section, again, provides that a motion to remand the case "on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal," and that a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment. 28 U.S.C. Sec. 1447(c). Foster, however, claims that the 30-day limit of section 1447(c) is not applicable to her motion for the same reason that the stipulation is not applicable to her motion--i.e., because the motion was not based on "any defect in removal procedure."[7]
 
 
 17
 Chesapeake's claim that the 30 day limit nonetheless applies to a motion not grounded on a defect in removal procedure is based on the legislative history of section 1447(c). Prior to the amendments made to section 1447 on November 19, 1988, by the Judicial Improvements and Access to Justice Act, Pub.L. No. 100-702, Sec. 1016, 102 Stat. 4670 (1988), section 1447(c) read:
 
 
 18
 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand the case, and may order the payment of just costs.
 
 
 19
 28 U.S.C. Sec. 1447(c) (1982).
 
 
 20
 The Report of the House Judiciary Committee accompanying the 1988 Act had this to say about old section 1447(c) and the new section as amended:
 
 
 21
 Section 1447(c) now appears to require remand to state court if at any time before final judgment it appears that the removal was improvident. So long as the defect in removal procedure does not involve a lack of federal subject matter jurisdiction, there is no reason why either State or Federal courts, or the parties, should be subject to the burdens of shuttling a case between the two courts that each have subject matter jurisdiction. There is also some risk that a party who is aware of a defect in removal procedure may hold the defect in reserve as a means of forum shopping if the litigation should take an unfavorable turn. The amendment provides a period of 30 days within which remand must be sought on any ground other than lack of subject matter jurisdiction. The amendment is written in terms of a defect in 'removal procedure' in order to avoid any implication that remand is unavailable after disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded.
 
 
 22
 H.R.Rep. No. 889, 100th Cong., 2d Sess. 72, reprinted in 1988 U.S.Code Cong. & Admin.News 5982, 6033. (Emphasis added).
 
 
 23
 Pointing to the above underscored language in the Report that states that "[t]he amendment provides a period of 30 days within which remand must be sought on any ground other than lack of subject matter jurisdiction," id. (emphasis added), Chesapeake asserts that all non-jurisdictional motions for remand--including those grounded upon a forum selection clause--must be made within the 30-day period.
 
 
 24
 We do not agree. As the district court noted, Chesapeake's theory is based on the erroneous principle that "if the statute is clear, one should appeal to the legislative history...." Indeed, section 1447(c) could not be clearer, and to adopt Chesapeake's view by drawing upon legislative history without an ambiguity appearing in the statute would be contrary to the rules of statutory construction. See Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (when language of statute is clear "judicial inquiry is complete"); United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (plain meaning of legislation is conclusive except in rare case where literal application of statute will produce result demonstrably at odds with intention of drafters); Paskel v. Heckler, 768 F.2d 540, 543 (3d Cir.1985) (while relevant legislative history must be considered, "clear statutory language placed an extraordinarily heavy burden on the party who seeks to vary it by reference to legislative history").
 
 
 25
 Moreover, the House Report itself recognizes the existence of at least one ground for remand not mentioned in section 1447(c) and not governed by the 30-day requirement--i.e., when "disposition of all federal questions leaves only State law questions that might be decided as a matter of ancillary or pendent jurisdiction or that instead might be remanded." H.R.Rep. No. 889, 100th Cong., 2d Sess. 72, reprinted in 1988 U.S.Code Cong. & Admin.News at 6033. This ground for remand was recognized by the Supreme Court in Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), and has, in turn, been used by at least one court of appeals for the proposition that there are other non-section 1447(c) reasons for remand, see Corcoran v. Ardra Ins. Co., 842 F.2d 31, 33-34 (2d Cir.1988) (abstention was legitimate, non-section 1447(c) ground for remand; citing and discussing Cohill ). The very legislative history upon which Chesapeake relies, then, recognizes that not all non-jurisdictional motions for remand are governed by the 30-day time limit section 1447(c).
 
 
 26
 Accordingly, as the statute is clear on its face and the legislative history ambiguous at best, the district court was correct in holding that section 1447(c)'s requirement that "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal" applies only to motions for remand on the basis of any defect in removal procedure. See 28 U.S.C. Sec. 1447(c). Cf. Air-Shields, Inc. v. Fullam, 891 F.2d 63, 65 (3d Cir.1989) ("[t]he 1988 version of Section 1447(c) omits the previous 'improvidently removed' grounds for removal and restricts the time for remand motions based on procedural defects"); State v. Ivory, 906 F.2d 999, 100 n. 1 (4th Cir.1990) ("The thirty-day limitation applies only to objections to defects in removal procedure").[8]C. Grounds For Remand
 
 
 27
 After determining that the motion to remand was timely, the district court considered whether the forum selection clause--assuming that it did waive Chesapeake's right to remove, and was enforceable--was a proper ground for remand. The district court concluded that the clause was a proper, non-statutory ground for remand.
 
 
 28
 We agree--although a reasonable argument for the opposing view exists. It is undeniable that in Cohill the Court repeatedly stressed that its holding was limited to the context of pendent jurisdiction and was based on the nature of pendent jurisdiction--i.e., that once the district court has discretion to decline to exercise pendent jurisdiction over the state-law claims by dismissing them, it has the power to remand them too. Here, of course, removal was based on diversity of citizenship, and the district court did not have discretion to decline to exercise jurisdiction: its jurisdiction was mandatory. Indeed, Cohill itself recognized this difference in distinguishing Thermtron when it said: "In Thermtron, the District Court had no authority to decline to hear the case. The court had diversity jurisdiction over the case, which is not discretionary. Thus, the District Court could not properly have removed the case from its docket, whether by a remand or a dismissal." 484 U.S. at 356, 108 S.Ct. at 621-22. Arguably, then, Cohill and Thermtron taken together could stand for the proposition that non-statutory remands are only authorized when the district court has discretion not to exercise pendent jurisdiction over the case. See Hughes v. Ohio Bell Telephone Co., 916 F.2d 367, 372 (6th Cir.1990). We believe, however, that this interpretation results from too narrow a reading of Cohill, the statutory procedures for removal and remand, and the powers of the district court.
 
 
 29
 First of all, the circumstance that a remand is based on non-statutory grounds, though important post-Thermtron, is, post-Cohill, of diminished significance. Cohill clearly overruled Thermtron to the extent that Thermtron had held that only statutory grounds for remand are authorized.
 
 
 30
 The Court's opinion in Thermtron contained absolute language to the effect that the only grounds available for remand are those specified by section 1447(c). See 423 U.S. at 345, 96 S.Ct. at 590 ("the remand was for reasons not authorized by statute"); id. n. 9 ("Lower federal courts have uniformly held that cases properly removed from state to federal court within the federal court's jurisdiction may not be remanded for discretionary reasons not authorized by the controlling statute"); id. at 351, 96 S.Ct. at 593 ("we are not convinced that Congress ever intended to extend carte blanche authority to the district court to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute").
 
 
 31
 Twelve years later, however, in Cohill, 484 U.S. 343, 108 S.Ct. 614, the Court found that the language in Thermtron "loses controlling force when read against the circumstances of that case." Id. at 355, 108 S.Ct. at 621. "The Thermtron decision," which, again, involved the sua sponte remand of a removed diversity action because of the congested state of the district court's docket, "was a response to a clearly impermissible remand, of a kind very different from that at issue here." Id. at 356, 108 S.Ct. at 621. In Cohill the district court remanded the pendent claims remaining in a removed federal question case once the federal question counts of the complaint had been eliminated. It had already been settled that once such a situation presented itself the district court could, in the exercise of its discretion, dismiss the remaining pendent claims. The Cohill court took this rule a step further and concluded that
 
 
 32
 a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine. Such discretion is precluded neither by the removal statute nor by our decision in Thermtron.
 
 Id. at 357, 108 S.Ct. at 622.[9]
 
 33
 Thus, as the Court of Appeals for the Seventh Circuit recognized in Rothner v. City of Chicago, 879 F.2d 1402 (7th Cir.1989) (where the main issue was the reviewability of the order of remand), "the [Cohill ] Court in effect held, contrary to Thermtron, that Sec. 1447(c) does not contain all of the permissible grounds for remand." 879 F.2d at 1406 (emphasis in original). And, as the dissent in Rothner put it in a useful formula with which the majority opinion in Rothner was in accord, Cohill
 
 
 34
 left us with three categories of grounds for remand: (1) those authorized by Sec. 1447(c) and beyond the power of appellate review; (2) those not authorized by Sec. 1447(c) but nonetheless lawful in principle and reviewable for error in execution (the example from [Cohill ] is a remand of a pendent state claim after deciding the federal claim that authorized the removal); (3) those not authorized by Sec. 1447(c) or anything else, and subject to automatic reversal (the example from
 
 
 35
 Thermtron is a remand of a suit the district court thinks it is too busy to hear).
 
 Id. at 1420.[10]
 
 36
 Section 1447(c), then, tells us that either defective removal procedure or lack of subject matter jurisdiction is a proper ground for remand. It also tells us that motions for remand grounded on the former are, and on the latter are not, governed by a 30-day time limit. Finally, as we have already noted, it tells us, in conjunction with section 1447(d), that remands based on either of these grounds are not reviewable by appeal or otherwise. But that is all. Section 1447(c) neither prohibits nor authorizes the order of remand here, based on a forum selection clause. It simply does not address the issue. Borrowing from the language of Cohill, then, as no one doubts the district court's power to dismiss pursuant to a properly construed forum selection clause if a plaintiff violates the clause,[11] "Congress's silence in the removal statute does not negate the power to.... remand...." 484 U.S. at 354, 108 S.Ct. at 621 (emphasis added).[12]
 
 
 37
 That said, we have little doubt that a remand based on a forum selection clause is lawful. Unlike the district court in Thermtron, the district court here did not refuse to hear a case properly before it. Indeed, the district court in this case accepted jurisdiction and, in the exercise of that jurisdiction, determined, as a threshold matter on the merits, that Chesapeake had waived its right to remove the case--i.e., that, pursuant to the parties' contract, the case ought not have been in federal court. Thus, while the district court did not have the discretion, as in Cohill, to decline to hear the case at all, once it determined that the clause barred Chesapeake from removing, it would have been committing clear error--and violence to the parties' contract--had it nevertheless continued to hear the case. Unlike the district court in Thermtron, then, the district court here, upon its view of the clause, could "properly have eliminated the case from its docket ... by a dismissal." Cohill, 484 U.S. at 356, 108 S.Ct. at 622. Indeed, at that point it had no discretion whatsoever not to remove the case from its docket. In such a situation, again unlike Thermtron, a remand, as opposed to dismissal, does no harm to removal or diversity jurisdiction. Measured against the concerns raised by Thermtron, and by analogy to those raised in Cohill, we therefore believe that the district court's remand was lawful.
 
 
 38
 Moreover, as the passage from the House Report set forth supra demonstrates, Congress is concerned that removal procedure be handled in a manner that promotes economy, convenience, and fairness--the very concerns used by the Court to justify the remand in Cohill. It is manifest that in giving effect to a forum selection clause by remanding rather than dismissing a case, concerns of economy and convenience are promoted. Fairness, too, is forwarded by a remand for once the district court determines that a defendant has violated a forum selection clause by wrongfully removing a case, justice and common sense warrant that a remand, rather than a dismissal, be ordered. Otherwise a plaintiff proceeding in accordance with the parties' agreement will be penalized for the conduct of a defendant who does not. The district court in remanding merely exercised its powers to fashion a remedy for breach of the clause, giving "effect to the legitimate expectations of the parties, manifested in their freely negotiated agreement, by specifically enforcing the forum clause," see The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972). The district court also thereby exercised its inherent powers to correct abuses of federal practice and procedure, vindicating the improper use of removal. Thus, if a defendant has removed a case in violation of a forum selection clause, remand is a particularly appropriate and effective remedy for the wrong. In sum, a forum selection clause can properly be the basis of remand. Cf. Corcoran v. Ardra Ins. Co., 842 F.2d at 31 (abstention in removed case was proper ground for remand).
 
 
 39
 D. Forum Selection Clause As Waiver Of Right To Remove
 
 
 40
 The forum selection clause in the reinsurance agreement provides:
 
 
 41
 In the event the Retrocessionaire [Chesapeake] is not domiciled in the United States of America, and the Retrocessionaire fails to pay any amount claimed to be due hereunder, the Retrocessionaire, at the request of the Company [Mutual Fire], will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction; and all matters arising hereunder shall be determined in accordance with the law and practice of such court.[13]
 
 
 42
 The district court, engaging in contractual construction over which we exercise plenary review, see, e.g., John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 659 (3d Cir.1986), cert. denied, 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1987); Ram Constr. Co. v. American States Ins. Co., 749 F.2d 1049, 1053 (3d Cir.1984), determined that the legal effect of the clause was to waive Chesapeake's right to remove. The right to remove may be waived, see generally J. Moore & B. Ringle, 1A Moore's Federal Practice p 0.157 at 149 (1990), and we agree with the district court that by consenting to "submit" to "any court" of competent jurisdiction "at the request of the Company," and to comply with all requirements necessary to give "such court" jurisdiction, Chesapeake agreed to go to, and stay in, the forum chosen by Mutual Fire.
 
 
 43
 This construction is in accord with a long line of cases treating similar language which found that the forum selection clauses waived the defendant's right to remove, and which therefore granted the plaintiff's motion to remand. See West Chestnut Realty of Haverford, Inc. v. First State Ins. Co., 1990 WESTLAW 87377 (U.S.D.C., E.D.Pa.1990); Cessna Aircraft Co. v. Fidelity & Cas. Co. of New York, 616 F.Supp. 671 (D.N.J.1985); Capital Bank & Trust Co. v. Associated Int'l Ins. Co., 576 F.Supp. 1522 (M.D.La.1984); Himes v. Admiral Ins. Co., 575 F.Supp. 312 (E.D.Ky.1983); Lavan Petroleum Co. v. Underwriters at Lloyds, 334 F.Supp. 1069 (S.D.N.Y.1971); Perini Corp. v. Orion Ins. Co., 331 F.Supp. 453 (E.D.Cal.1971); Oil Well Serv. Co. v. Underwriters at Lloyd's London, 302 F.Supp. 384 (C.D.Cal.1969); Euzzino v. London & Edinburgh Ins. Co., 228 F.Supp. 431 (N.D.Ill.1964); General Phoenix Corp. v. Malyon, 88 F.Supp. 502 (S.D.N.Y.1949). We also note that the clause in this case provides that matters arising out of the reinsurance agreement are to "be determined in accordance with the law and practice of such court," and, in a separate paragraph, that Chesapeake agrees to "abide by the final decision of such court"--such court, of course referring to the court to which Chesapeake agreed to submit at the request of Mutual Fire. Thus, Chesapeake's removal was particularly violative of these portions of the clause, for removal prevents such court from rendering a final decision, and while the substantive law to be applied by the federal court upon removal of this diversity action would still be that applied in the state court, the practice of the federal courts rather than that of the Commonwealth Court of Pennsylvania would govern the matter. See Euzzino, 228 F.Supp. at 433; General Phoenix, 88 F.Supp. at 503.[14] This, together with the rest of the clause's language, convinces us that Chesapeake waived its right to remove the action.[15] See C. Wright, A. Miller, & E. Cooper, 14A Federal Practice & Procedure Sec. 3721 at 223 (1985) (finding "persuasive" cases which construe this clause as valid waiver of removal).[16]
 
 
 44
 E. Enforceability of the Forum Selection Clause
 
 
 45
 Finally, we agree that the clause is enforceable in this case.[17] In The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, the Supreme Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Id. at 10, 92 S.Ct. at 1913. A forum selection clause is "unreasonable" where the defendant can make a "strong showing" id. at 15, 92 S.Ct. at 1916, either that the forum thus selected is "so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court," id. at 18, 92 S.Ct. at 1917, or that the clause was procured through "fraud or overreaching," id. at 15, 92 S.Ct. at 1916. No showing--let alone a "strong showing"--of either of these elements was made by Chesapeake. Chesapeake admits that by the clause it waived any claim to inconvenience of forum, and the agreement between it and Mutual Fire was clearly an arms'-length deal, between sophisticated commercial entities, "unaffected by fraud, undue influence, or overweening bargaining power," cf. id. at 12, 92 S.Ct. at 1914. That there may not have been actual negotiations over the clause does not affect its validity. See Carnival Cruise Lines, Inc. v. Shute, --- U.S. ----, ----, 111 S.Ct. 1522, 1526, 113 L.Ed.2d 622 (1991). In general, the insurance industry has obviously long found it a convenient and expeditious provision to include in its contracts where it binds the insurer, see n. 13, supra, and it is a particularly fair provision in a reinsurance treaty, as it allows the ceding company, rather than the many and far-flung retrocessionaires, to select the forum when the retrocessionaires have refused to pay.
 
 III.
 CONCLUSION
 
 46
 In light of the foregoing we conclude that: (1) our jurisdiction over this appeal is not barred by 28 U.S.C. Sec. 1447(d) and the district court's order of remand was "final" for the purposes of 28 U.S.C. Sec. 1291; (2) Foster's motion to remand was not barred by the 30-day time limit of 28 U.S.C. Sec. 1447(c); (3) enforcement of a waiver of the right to remove is a proper ground for remand; (4) Chesapeake waived its right to remove in the forum selection clause of its contract with Mutual Fire; and (5) the clause is enforceable. Accordingly, we will affirm the order of September 27, 1990, of the district court remanding this case to the Commonwealth Court of Pennsylvania.
 
 
 
 [1]
 Provision for remand is also made in 28 U.S.C. Sec. 1441(c) in circumstances not applicable here. A forum selection clause is also called a "service of suit" clause but as a matter of convenience we will use the first designation
 
 
 [2]
 Actually there were several treaties between Mutual Fire and Chesapeake but as the parties do not distinguish among them for purposes of the forum selection clause we refer to them in the singular
 
 
 [3]
 At year-end 1988, Mutual Fire's deficit was over $400,000,000, constituting the country's third or fourth largest insurer insolvency
 
 
 [4]
 An exception is made for civil rights cases remanded to the state court. 28 U.S.C. Sec. 1447(d). Additionally, the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") empowers the Resolution Trust Corporation to remove actions to federal court and also gives it the right to appeal any remand orders issued by a district court. See 12 U.S.C. Sec. 1441a(l )(3)
 
 
 [5]
 Cf. Air-Shields, Inc. v. Fullam, 891 F.2d 63, 66 (3d Cir.1989) (more than 30 days after notice of removal filed, district court sua sponte remanded case due to procedural defects; as district court's order was therefore not based on section 1447(c), in the sense that it did not comply with the 30-day limitation period therein, this court's review on mandamus was not limited by section 1447(d))
 
 
 [6]
 We note that because the order challenged is collaterally "final" as making a merits determination, an appeal is proper here, not a petition for mandamus. See Corcoran v. Ardra Ins. Co., 842 F.2d 31, 35 (2d Cir.1988); Karl Koch Erecting Co. v. New York Convention Center Dev. Corp., 838 F.2d at 659 n. 1; Pelleport Investors, Inc. v. Budco Quality Theatres, Inc., 741 F.2d at 277-78. Of course, if we considered that mandamus was required, we could treat the notice of appeal as an application for the writ. We also point out that in McLaughlin v. ARCO Polymers, Inc., 721 F.2d 426, 428 n. 1 (3d Cir.1983), we held, without reliance on the collateral order doctrine, that an order transferring an action commenced in a district court to a state court on the ground that the district court lacked subject matter jurisdiction was appealable as a final order. While, we recognize that an order remanding for lack of jurisdiction is subject to 28 U.S.C. Sec. 1447(d), it is difficult in principle to distinguish between an order of remand and an order of transfer for purposes of finality as in both situations the order effectively terminates the case in the federal courts. See Carteret Savings Bank, FA v. Shushan, 919 F.2d 225, 229 n. 7 (3d Cir.1990)
 
 
 [7]
 A forum selection clause does not oust a court of subject matter jurisdiction, The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12, 92 S.Ct. 1907, 1914, 32 L.Ed.2d 513 (1972), and abstention is, of course, predicated on the notion that while the federal court has subject jurisdiction, it should decline to exercise it. Accordingly, neither prong of Foster's motion raised the issue of lack of subject matter jurisdiction
 
 
 [8]
 It is true that Chesapeake's position has solid policy reasons behind it. As the House Report recognizes, it is a waste of everyone's time for cases to be shuttled back and forth between two courts that have jurisdiction, and the waste is exacerbated where the case has been removed, litigated at the federal level for quite some time, and then, due to a late-raised issue of defective removal, remanded. Moreover, the House Report also recognizes the unsavory possibility of a plaintiff keeping a defect in removal on reserve as an escape hatch should the federal litigation begin to bode ill. These policy concerns counselling a short time limit for motions to remand no doubt apply to all non-jurisdictional grounds for remand, including a forum selection clause. However, a district court in the proper exercise of its discretion may deny as untimely a non-procedural-defect, non-jurisdictional motion to remand if made at an unreasonably late stage of the federal litigation. See C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure Sec. 3721 at 227-28 (1985). The policy concerns behind this rule, however, simply are not present in this case as Foster's motion was made on the 54th day after removal
 
 
 [9]
 Chief Justice Rehnquist and Justices White and Scalia dissented and would have held that the Thermtron language meant what it said--i.e., "cases may be remanded only for reasons authorized by statute ...," Cohill, 484 U.S. at 354, 108 S.Ct. at 623 (White, J., dissenting), since the federal courts do not possess an inherent power to remand, id. at 360, 108 S.Ct. at 624
 
 
 [10]
 In Rothner, the district court remanded after having determined that the defendant had waived its right to remove, prior to the expiration of the 30-day period given for removal, by participating in the initial state court proceedings. The court of appeals issued a writ of mandamus directing the district court to entertain the action, finding that the defendant had not waived its right to remove. The dissent argued that the district court's order of remand was made pursuant to section 1447(c), and thus was unreviewable under section 1447(d). Neither the majority nor the dissent, however, appears to have been troubled over whether waiver of removal is a proper ground for remand. Indeed, it seems that no post-Cohill forum selection case has addressed the issue
 
 
 [11]
 See most recently Carnival Cruise Lines, Inc. v. Shute, --- U.S. ----, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)
 
 
 [12]
 We realize that our result may not be consistent with Cooley v. Pennsylvania Housing Finance Agency, 830 F.2d 469 (3d Cir.1987), and Levy v. Weissman, 671 F.2d 766 (3d Cir.1986), as they support the conclusion that the basis of a remand must be statutory. These cases, however, are not controlling for, as noted in Cooley, they are pre-Cohill, 830 F.2d at 475
 
 
 [13]
 Forum selection clauses are in rather widespread use throughout the insurance industry. See, e.g., In re Delta Re Ins. Co., 900 F.2d 890, 892 (6th Cir.1990)
 
 
 [14]
 Indeed, in Roberts v. Lexington Ins. Co., 305 F.Supp. 47 (E.D.N.C.1969), concentrating on "the practice" portion of "all matters arising hereunder shall be determined in accordance with the law and practice of such court," the court held that this language constituted an express prohibition against removal. However, employing a legal theory subsequently rendered outmoded by the Supreme Court in The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513, the Roberts court refused to enforce the clause, finding it an illegal attempt to "oust" the federal courts of their jurisdiction. See also Hasek v. Certain Lloyd's Underwriters, 228 F.Supp. 754 (W.D.Mo.1963) (clause illegal and void contractual limitation of court's jurisdiction). In The Bremen, however, the Court said that forum selection clauses do not "oust" courts of jurisdiction, and held that they are prima facie enforceable
 
 
 [15]
 We note that in In re Delta Re Ins. Co., 900 F.2d 890, the Court of Appeals for the Sixth Circuit, construing virtually the same clause as that involved here, reversed an order of remand, holding that the clause did not work a waiver of the right to remove. In Delta, the defendant, a commercial bank branch of a foreign sovereign, removed a state court action pursuant to 28 U.S.C. Sec. 1441(d), a part of the Foreign Sovereign Immunities Act (FSIA), which extends removal to actions brought against foreign states and which permits the foreign state to demand a non-jury trial once in federal court. The court of appeals turned to the language of the clause and, utilizing a standard it had applied in an earlier forum-selection/waiver-of-removal case--Regis Assocs. v. Rank Hotels (Management) Ltd., 894 F.2d 193 (6th Cir.1990)--, found that the clause did not "clearly and unequivocally" reveal an intent to waive the right to remove. The court then proceeded, however, to explain that this finding was especially bolstered by the language and purpose of section 1441(d). As the section gave foreign sovereigns the unqualified right to remove actions commenced against them in state court, and thus avoid "any local bias or prejudices possibly inherent in state court proceedings and also to avoid trial by jury," 900 F.2d at 893, the court could "conceive of no reason why a foreign state would waive a right of removal. Since the FSIA allows a foreign state to remain in a state court if sued there and have a jury if desired, there is absolutely nothing to be gained by giving up the option to go to federal court and avoid a jury trial." Id. Finally, noting that the FSIA represents a drastic departure from the previously long-standing rule granting foreign sovereigns absolute immunity, and that under the FSIA immunity nevertheless remains an important threshold consideration, the court felt that the purposes behind the FSIA, and section 1441(d) in particular, are best served by the development, in federal court, of a uniform body of law on sovereign immunity in the FSIA era. 900 F.2d at 894. Obviously viewing the element of foreign sovereignty of paramount importance, the court concluded: "In order to provide maximum guidance for future cases involving foreign states, we hold that any claimed waiver of the right of removal stemming from contractual language must be explicit." Id. at 894 (footnote omitted). Inasmuch as we believe Delta was primarily driven by considerations peculiar to the FSIA, we do not find it persuasive here
 Moreover, we do not see why contractual waivers of the right to remove must be "clear and unequivocal." True, no less a commentator than Professor Moore states the proposition broadly: "Waiver of the right to remove is ... possible but defendant's intent must be clear and unequivocal." J. Moore & B. Ringle, 1A Moore's Federal Practice p 0.157 at 152. See also Weltman v. Silna, 879 F.2d 425, 427 (8th Cir.1989) (same; citing Moore's ). But Moore makes his statement solely in the context of a discussion of waiver of removal by the defendant's participation in state court proceedings. See generally Moore's p 0.157 at 149-55. And, indeed, the cases cited by Moore's, and by the Court of Appeals for the Sixth Circuit in Delta and Regis, either involved non-contractual, litigation-based waivers, see Kiddie Rides U.S.A., Inc. v. Elektro-Mobiltechnik GMBH, 579 F.Supp. 1476 (C.D.Ill.1984); Carpenter v. Illinois Cent. Gulf R.R. Co., 524 F.Supp. 249 (M.D.La.1981); Hildreth v. General Instrument, Inc., 258 F.Supp. 29 (D.S.C.1966); Champion Brick Co. of Baltimore County v. Signode Corp., 37 F.R.D. 2 (D.Md.1965); Rockwell v. United States Fidelity & Guar. Co., 137 F.Supp. 317 (M.D.Pa.1955); Davila v. Hilton Hotels Int'l, Inc., 97 F.Supp. 32 (D.P.R.1951); or, in turn, cited non-contractual waiver cases or Moore's, see Capital Bank & Trust Co. v. Associated Int'l Ins. Co., 576 F.Supp. 1522 (M.D.La.1984); Morgan Dallas Corp. v. Orleans Parish School Bd., 302 F.Supp. 1208 (E.D.La.1969). In the context of litigation-based waiver, the "clear and unequivocal" standard makes sense. Otherwise, in order not to waive the right to remove defendants would have to remain inactive in the state court, running the peril of being held in default should a remand from the district court later occur. See Moore's p 0.157 at 154.
 In the context of contractual waiver, however, we do not perceive the need for the "clear and unequivocal" standard. While it is true that removal represents what has somewhat reverently been called "a statutory right to a federal forum" (a right the Supreme Court was obviously willing to vindicate in Thermtron ), this talismanic phrase loses much of its fire in light of the fact that for "approximately five score years" the federal courts "have construed the removal statutes strictly and, on the whole, against the right of removal," Moore's p 0.157[1.- 3] at 38 (emphasis added). The "clear and unequivocal" standard, then, fails to consider the constrictive rather than expansive nature of the right of removal, in addition to serving no meritorious policy of litigation. It probably had its genesis in the notion, now discarded, that forum selection clauses were presumptively unenforceable as "contrary to public policy" or as an illegal attempt to "oust" the court's jurisdiction. The Supreme Court has said that this notion is old-fashioned and contrary to freedom of contract. The Bremen v. Zapata Off-Shore Co., 407 U.S. at 10-12, 92 S.Ct. at 1913-14.
 We think the "clear and convincing" standard so stringent as to be contrary to the right of parties to contract in advance regarding where they will litigate. A court simply should determine contractual waiver of the right to remove using the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions. Indeed, inasmuch as the determination of whether there is a waiver of the right of removal to be derived from a forum selection clause will at least in some cases, such as here, be a matter of construction and thus of law, it seems anamolous to speak of a "clear and unequivocal" standard for we simply make plenary determinations of legal issues.
 
 
 [16]
 Chesapeake regards Patten Securities Corp. v. Diamond Greyhound & Genetics, Inc., 819 F.2d 400 (3d Cir.1987), as "closely analogous" to this case but we do not. There a customer of a securities dealer sought to arbitrate a claim against the dealer. In a reversal of the usual pattern in such cases, the dealer preferred a judicial tribunal for resolution of the dispute and thus brought an action against the customer in the district court for declaratory relief and, alternatively, for damages. In the district court the dealer sought an order to compel the customer to discontinue the arbitration contending, inter alia, that the customer waived the right to arbitrate by agreeing to a forum selection clause consenting to the jurisdiction of the state and federal courts in New Jersey. We rejected this contention for various reasons including the circumstance that while we regarded arbitration as favored, forum selection clauses must be scrutinized carefully so that "if doubts arise as to whether this dispute is arbitrable or not, such doubts must be resolved in favor of arbitrability." Id. at 407. No such consideration of preferred forum is implicated in remanding this case as there is no reason for a preference for a federal over a state court in this action. See note 15, supra
 
 
 [17]
 We will assume that our review is plenary on this essentially factual issue as the matter was resolved in the district court on a record developed on a motion. But the standard of review on this point is not critical as Chesapeake's position on it is completely insubstantial