INTERNATIONAL BUSINESS SOFTWARE SOLUTIONS, INC. d/b/a IBSS, Plaintiff,

v.

SAIL LABS TECHNOLOGY, AG, Defendant.

Civil Action No. 05–cv–4629 (PGS).

United States District Court, D. New Jersey.

July 25, 2006.

Patrick Papalia, Herten, Burstein, Sheridan, Cevasco, Bottinelli, Litt, Toskos & Harz, LLC, Hackensack, NJ, for Plaintiff.

John J. Petriello, Levy, Ehrlich & Petriello, PC, Newark, NJ, for Defendant.

## OPINION

SHERIDAN, United States Magistrate Judge.

This is an appeal of the Magistrate Judge's decision denying plaintiff's motion to remand this matter to the New Jersey Superior Court, and granting defendant's motion to dismiss on grounds of international comity. There was also a motion by plaintiff to disqualify defendant's attorneys due to a conflict of interest (evidently, the magistrate did not render a decision on this issue). Objections raised to dispositive issues are afforded a de novo review. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). The Court has reviewed the complete record including the papers submitted in connection with this objection. In short, the decision of Magistrate Judge Hedges is affirmed primarily for the reasons set forth in his Report and Recommendations dated March 6, 2006. The Court adds the following comments.

Basically, this is a business dispute arising from several contracts and alleged oral representations between a New Jersey corporation and one based in Austria. There is another case pending in Austria which concerns the same facts and issues.

In the papers filed on appeal, International Business Software Solutions, Inc. (IBSS) asserts that it did not set forth a counterclaim within the litigation pending in Austria, and Judge Hedges decision appears to indicate otherwise. It is the substance of those counterclaims which movant believes is subject to the jurisdiction of this Court, and which precludes the application of the principle of comity in this

case. The defendant, Sail Labs Technology, does not disagree with this contention, but avers that such claims may still be timely brought before the Austrian Courts. From this Court's review, the Magistrate's Order is broad enough to encompass the concern of the plaintiff. That is, if the substantive claims in the counterclaim are not addressed by the Austrian Courts, then IBSS may seek reconsideration here.

█ In the event reconsideration is required, the motion to disqualify the firm of Levy, Ehrlich & Petrillo (LEP) must be addressed. From a review of the briefs, the motion to disqualify is denied for the following reasons.

Plaintiff, IBSS alleges that LEP had previously represented it on several matters between 2000 and 2002, and LEP obtained confidential information including trade secrets of IBSS. However, the affidavits in support of those allegations are ambiguous, non-specific, and are not supported by other facts presented. The parties agree that LEP represented IBSS on five straightforward collection cases all of which resulted in the entry of default judgments. The case arose out of contracts to provide temporary technology employees to various business entities. There were no trade secrets, or confidential matters involved.

The operative rule is R.P.C. 1.9 which governs successive representations. That Rule states, in relevant part:

(a) A lawyer who has represented a client in a matter shall not thereafter:
(1) represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation with the former client ...

The threshold inquiry is whether the matters which LEP handled for IBSS were substantially related to the matter before the Court. The New Jersey Supreme Court employs a "substantial relationship" test for determining whether disqualification is warranted under R.P.C. 1.9(a)(1). Under that test, a movant must prove: (1) the existence of a past attorney-client relationship between the movant and the attorney sought to be disqualified; (2) that the interests of the attorney's current client are materially adverse to those of the movant; and (3) the current representation involves the same or a matter substantially related to the former representation. *Host Marriott Corp. v. Fast Food Operators, Inc.*, 891 F.Supp. 1002, 1007 (D.N.J.1995). Where the moving party has established that the matters are substantially related, the Court will presume that the attorney has acquired confidential information from the former client. *Essex Chemical Corp. v. Hartford Accident and Indemnity*, 993 F.Supp. 241, 246 (D.N.J. 1998) (citing *Reardon v. Marlayne, Inc.*, 83 N.J. 460, 473, 416 A.2d 852 (1980); *Herbert v. Haytaian*, 292 N.J.Super. 426, 438, 678 A.2d 1183, 1189 (App.Div.1996)). In this case, plaintiff fails to establish any substantive relationship between the matters because the current matter (a dispute over software licensing matter) does not relate to the previous contracts to provide temporary workers.

The case is dismissed without prejudice, and without costs.

### REPORT & RECOMMENDATION

RONALD HEDGES, United States Magistrate Judge.

#### *INTRODUCTION*

This matter comes before me on plaintiff's motion to remand this civil action to the Superior Court of New Jersey, Bergen County, and on defendant's motion to dismiss the Complaint. The motions were

referred to me by Judge Martini. I have considered the papers submitted in support of and in opposition to the motions. There was no oral argument. Rule 78.

## BACKGROUND

### Agreements at Issue

Plaintiff International Business Software Solutions ("IBSS") is a New Jersey corporation, with its primary place of business in Middlesex County. IBSS markets and provides computer software and computer consultants to clients. Defendant Sail Labs ("Sail") is an Austrian corporation that develops computer software.

In 2003, the parties entered into negotiations concerning a potential business relationship pursuant to which IBSS would use, market and distribute Sail' software. The negotiations culminated in four agreements. On February 17, 2003, the parties executed the Mutual Non–Disclosure Agreement ("MNDA"). The stated purpose of the MNDA was to safeguard confidential information disclosed by both parties during negotiations. *See* MNDA § 1. The Agreement contains a choice of law and forum selection clause:

> This Agreement is made in the State of New Jersey and shall be governed and interpreted in accordance with New Jersey law. All disputes arising out of this Agreement shall be subject to the exclusive jurisdiction of the Superior Court of New Jersey, Bergen or Middlesex County, New Jersey, and the parties agree and submit to the personal and exclusive jurisdiction of these courts. [§ 4(b) ].

In April 2003, the parties executed the Software License Agreement ("SLA"). The SLA gave IBSS a license to use Sail's software. *See* SLA § 2. The SLA also contained a choice of law and forum selection clause:

> This Agreement *shall be exclusively* governed by and construed in accordance with Austrian Law. All disputes arising from this Agreement or relating to its violation, dissolution or nullity *shall be exclusively* submitted to the court having subject matter jurisdiction for 1040 Vienna. [§ 13 ¶ 1–2 (emphasis added) ].

The parties subsequently drafted, but did not execute, the Strategic Partner Business Plan ("SPBP"), effective July 1, 2003, to June 30, 2004. The SPBP defined the details of the parties' cooperation for the upcoming year. It required IBSS to purchase a specified amount of software licenses from Sail in exchange for Sail's promise to exclude various Middle Eastern regions "from new partner contracts for the term of this agreement." *See* SPBP.

Finally, on August 12, 2003, the parties executed the Distribution Agreement, which provided a comprehensive list of the parties' rights and obligations in connection with distribution of Sail's software. Specifically, the Distribution Agreement gave IBSS the right to sell Sail's software in its own name, "a non-exclusive, personal, non-transferable license" to use, distribute and sub-license Sail's software, and the right to refer to Sail's firm name or trademark in marketing the software. *See* Distribution Agreement § 1 ¶ 1–2 and § 2 ¶ 2. The Agreement also stated that it "supersedes any and all prior oral and written agreements, understandings and quotations relating thereto." § 11 ¶ 1. The Distribution Agreement's choice of law and forum selection clause provided:

> This agreement *will be* governed by and construed and enforced in accordance with the laws of Austria. Any dispute, differences and questions arising out or in connection with this Agreement *may be* brought and prosecuted before and settled by the competent court in Vienna. [§ 11 ¶ 3–4 (emphasis added) ].

## The Austrian Litigation

On or about May 19, 2004, Sail instituted an action against IBSS in the Commercial Court of Vienna, Austria, attempting to collect payment for software it allegedly delivered to IBSS in July 2003. On October 16, 2004, IBSS appeared in the Vienna Court, submitting an Answer to Sail's claim and challenging the Vienna Court's jurisdiction.

IBSS' Answer raised counterclaims that are virtually the same as the claims in the present Complaint. IBSS argued that Sail made two promises to IBSS after the execution of the MNDA that induced IBSS to execute the Distribution Agreement and the SLA. Answer ¶ 9–11. Allegedly, during the parties' negotiations, Sail represented that IBSS would have exclusive territorial and geographic rights to sell Sail's products in certain Middle Eastern countries. Answer ¶ 9. IBSS contended it later learned that Sail already had a contact with SAKHR, a leading Middle–Eastern software company, for the distribution of Sail's products in the countries promised exclusively to IBSS. Answer ¶ 10. Also, IBSS alleged that although Sail promised it would not compete with IBSS in the distribution of its software, it outbid IBSS on a U.S. government contract. ¶ 11. Based on these alleged misrepresentations, IBSS claimed that the Distribution Agreement and the SLA are "dissolved" and the MNDA governs the parties' dispute. ¶ 13. Sail denied IBSS' allegations and is currently defending them in the Vienna Court.

IBSS objected to the Vienna Court's jurisdiction based on the MNDA's choice of law and forum selection clause. The Vienna Court has not resolved the jurisdictional challenge, but is considering the merits of the parties' claims nevertheless. Under Austrian law, a court may hold a separate hearing on jurisdiction at the outset or proceed on the merits and subsequently issue a joint decision on the merits and jurisdiction. *See* Brief in Support of Defendant's Motion to Dismiss p. 13.

## The United States Litigation

On September 29, 2004, IBSS filed the Complaint at issue. The Complaint, like IBSS' Answer to the Austrian litigation, alleges that during the parties' negotiations Sail promised IBSS exclusive distribution rights in various Middle Eastern countries and that it would not to compete with IBSS in the distribution of Sail's software. IBSS asserts that Sail broke its promises and is suing Sail for breach of contract, breach of duty of good faith and fair dealing, unjust enrichment, fraud in the inducement, intentional misrepresentation and fraud, negligent misrepresentation and tortuous interference.

On September 22, 2005, Sail filed a Notice of Removal, seeking to have this action removed based on diversity jurisdiction. On November 14, 2005, Sail filed a Motion to dismiss the Complaint based on the forum selection clauses in the SLA and the Distribution Agreement, as well as comity considerations. On December 5, 2005, IBSS filed a Motion to remand based on the forum selection clause in the MNDA.

## DISCUSSION

### I. IBSS' Motion to Remand

IBSS argues that the forum selection clause in the MNDA is a proper ground for remand. I conclude that the MNDA does not govern IBSS' claims and recommend that the Motion to remand be denied.

Civil actions may be removed to the district court only if it would have had original subject matter jurisdiction. 28 U.S.C. § 1441; *see, e.g., Independent Machine Co. v. Int'l Tray Pads & Packaging Inc.,* 991 F.Supp. 687, 690 (D.N.J.1998). 28 U.S.C. § 1332(a)(2) provides that sub-

ject matter jurisdiction may be based on diversity of citizenship when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state." The moving party bears the burden of establishing subject matter jurisdiction. *Boyer v. Snap–On Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990).

A defendant wishing to remove a civil action to the district court must file a notice of removal within thirty days after receipt of the complaint. 28. U.S.C. § 1446(a). If an action is not properly removed, the district court must remand it to the state court from which it was removed. 28 U.S.C. § 1447(c) provides: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." However, the Third Circuit has determined that the 30–day time limit does not apply to a motion to remand based on a forum selection clause. *Foster v. Chesapeake Insurance Co.*, 933 F.2d 1207, 1213 (3d Cir.1991) ("section 1447(c)'s requirement ... applies *only* to motions for remand *on the basis of any defect in removal procedure*"). *Foster* does allow a court the discretion to deny as untimely an unreasonably late motion to remand that is based on a forum selection clause. 933 F.2d at 1213.

■ A forum selection clause is presumptively valid and enforceable, unless the party resisting enforcement can "make a strong showing, either that the forum thus selected is so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court, or that the clause was procured through fraud or overreaching." *Foster*, 933 F.2d at 1219. The presence of " '[a] forum selection clause *does not oust a court of subject matter jurisdiction*.' " *Foster*, 933

F.2d at 1212 *(quoting Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). However, a court should decline to adjudicate a matter governed by a mandatory forum selection clause that vests authority in a different jurisdiction. *See Foster*, 933 F.2d at 1212.

■ Since the parties' motions were timely filed, I will proceed to the merits of IBSS' motion. IBSS argues that the forum selection clause in the MNDA governs. The MNDA's express purpose is to safeguard confidential information exchanged during the parties' negotiations concerning a potential business relationship. § 1. The MNDA's choice of law and forum selection clause provides:

> This Agreement is made in the State of New Jersey and shall be governed and interpreted in accordance with New Jersey law. All disputes arising out of this Agreement shall be subject to the exclusive jurisdiction of the Superior Court of New Jersey, Bergen or Middlesex County, New Jersey, and the parties agree and submit to the personal and exclusive jurisdiction of these courts. [§ 4(b) ].

In interpreting a forum selection clause, the court must initially look to the contract provision at issue to determine whether it is "unambiguous"—i.e., "reasonably capable of only one construction." *Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir.1997). The MNDA appears unambiguous. The choice of law and forum selection clause is constrained by the MNDA's express purpose, and only applies to claims "arising out of" disclosure or other misappropriation of confidential information.

IBSS does not explain why the MNDA governs its distribution claims. In fact, IBSS' Complaint does not identify the MNDA as the contract violated by Sail's alleged misrepresentations. Rather, the Complaint generally asserts that Sail vio-

lated the parties' "agreements." The last reply brief IBSS submitted generally alleges that Sail disclosed confidential marketing plans developed by IBSS during the parties' negotiations. This allegation is mentioned one other time in the Certification of Kamal Kuchana, an IBSS officer. This Court has discretion to look beyond the complaint in deciding a motion for remand. *Envtl. Tectonics Corp. v. Summer Lake Int'l Enters. Copr.*, 2002 WL 32348286, *1–2, 2002 U.S. Dist. LEXIS 16297, *4–5 (E.D.Pa.2002). However, IBSS' allegation is too vague and "last minute" to create a genuine question about the applicability of the MNDA. Therefore, I will only consider the claims in the Complaint.

Sail opposes remand, arguing that the forum selection clauses in the SLA and Distribution Agreement govern IBSS' claims. The SLA, which directs IBSS' use of Sail's software, has a mandatory choice of law and forum selection clause: [1]

> This Agreement *shall be exclusively* governed by and construed in accordance with Austrian Law. All disputes arising from this Agreement or relating to its violation, dissolution or nullity *shall be exclusively* submitted to the court having subject matter jurisdiction for 1040 Vienna. [§ 13 ¶ 1–2 (emphasis added)].

The Distribution Agreement, which comprehensively details the parties' rights and obligations in connection with distribution of Sail Labs' software, has a permissive choice of law and forum selection clause: [2]

> This agreement *will be* governed by and construed and enforced in accordance with the laws of Austria. Any dispute, differences and questions arising out or in connection with this Agreement *may be* brought and prosecuted before and settled by the competent court in Vienna. [§ 11 ¶ 3–4 (emphasis added)].

The MNDA is inapplicable here because IBSS' claims do not "arise out of" disclosure of confidential information obtained during negotiations. IBSS' claims involve distribution issues pertaining to the Distribution Agreement and the SPBP encompassed therein. The Distribution Agreement is intended as the supreme, all-encompassing statement of the parties' distribution rights. It clearly provides:

> This Agreement sets forth the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes any and all prior oral and written agreements, understandings and quotations relating hereto. [§ 11 ¶ 1].

IBSS contends that the Distribution Agreement does not govern because Sail made the alleged misrepresentations before the Distribution Agreement was executed. However, the language of the Distribution Agreement is broad enough to encompass distribution issues arising prior to its formation. *See National Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F.Supp. 671 (D.N.J.1993) (holding dealer's claim that supplier breached oral agreement are encompassed by forum se-

---

1. " 'Mandatory forum selection clause' identifies [a] particular state or court as having exclusive jurisdiction over disputes arising out of parties' contract and their contractual relationship." *S & D Coffee, Inc. v. GEI Autowrappers*, 995 F.Supp. 607, 609 (M.D.N.C. 1997).

2. " 'Permissive forum selection clause,' which is perhaps more appropriately referred to as 'consent to jurisdiction' clause, merely specifies [the] court empowered to hear litigation, in effect waiving any objection to personal jurisdiction in venue; such a clause is 'permissive' since it allows parties to air any dispute in that court without requiring them to do so." *S & D Coffee, Inc.*, 995 F.Supp. at 609.

lection clause in agreement executed ten years later because agreement broadly applied to "any and all causes of action hereunder").

IBSS admits that Sail's promise to grant IBSS exclusive distribution rights in various Middle Eastern countries is stated in the SPBP. The SPBP provides that Sail will exclude various Middle Eastern regions "from new partner contracts for the term of this agreement." The SPBP does not contain its own choice of law and/or forum selection clause. However, it is referenced by and annexed to the Distribution Agreement. Also, Sail's alleged promise not to compete with IBSS is not found in any agreements. However, since this claim involves distribution, and not disclosure of confidential information or licensing issues, I find it concerns the Distribution Agreement.

## II. Motion to Dismiss

■ Sail argues that this case should be dismissed based on comity.[3] Sail argues that the Commercial Court of Vienna, Austria, is currently adjudicating a lawsuit between it and IBSS based on issues virtually identical to the ones here. A federal court may, in its discretion, dismiss a case based on comity. *See Lexington Ins. Co. v. Forrest*, 263 F.Supp.2d 986, 1002 (E.D.Pa.2003).

Comity is a recognition which one nation extends within its own territory to the legislative, executive, or judicial acts of another. It is not a rule of law, but one of practice, convenience, and expediency. Although more than mere courtesy and accommodation, comity does not achieve the force of an imperative or obligation. Rather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws. Comity should be withheld only when its acceptance would be contrary or prejudicial to the interest of the nation called upon to give it effect.

*Somportex Ltd. v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 440 (3d Cir. 1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1294, 31 L.Ed.2d 479 (1972).

■ As a threshold matter, the court must find that the foreign proceeding is duplicative or parallel to the domestic proceeding. *Hay Acquisition Co. v. Schneider*, 2005 WL 1017804, *11 (E.D.Pa. April 27, 2005). "Parallel" or "duplicative" means there is a " 'substantial likelihood that the [foreign] litigation will dispose of all claims presented in the federal case.' " *Lexington Ins. Co.*, 263 F.Supp.2d at 1,003 (E.D.Pa.2003) *(quoting Lumen Constr. Inc. v. Brant Const. Co.*, 780 F.2d 691, 695 (7th Cir.1985)).

Here, the Austrian litigation is parallel to this litigation. The Answer IBSS submitted to the Vienna Court raised counterclaims virtually identical to its claims here. Specifically, IBSS contended that Sail made two misrepresentations concerning its distribution rights and that the MNDA governs the parties' dispute. IBSS argues that the Austrian litigation is not parallel because it arises from Sail's collection

---

**3.** Sail also argues that the Complaint should be dismissed based on the forum selection clauses in the Distribution Agreement and the SLA. I determined that the SLA does not govern because the Complaint relates to distribution, and not licensing, issues. Further, the forum selection clause in the Distribution Agreement is merely permissive because it does not vest jurisdiction exclusively in the Austrian courts; therefore, it is not enforceable. *S & D Coffee, Inc.*, 995 F.Supp. at 610. Additionally, IBSS argues that the forum selection clause in the Distribution Agreement is invalid under New Jersey's Franchise Practices Act, N.J.S.A. 56:10, et seq. Because I determined that this forum selection clause is unenforceable, I will not consider whether the Franchise Practices Act governs.

claim for software allegedly shipped to IBSS. However, the key inquiry is whether the Austrian litigation will dispose of the claims before this Court. According to Dr. Judith Schacherreiter, a professor of law at the University of Vienna, who was retained by Sail to review the Austrian litigation, the Vienna Court has jurisdiction over IBSS' counterclaims that is independent of its jurisdiction over Sail's original claim and may resolve these even if it dismisses Sail's claim. Baumgarten Cert., Exhibit B (Dr. Schacherreiter's Report) p. 7. The Vienna court will dispose of the claims before this Court.

Next, the Court must find "extraordinary circumstances" warranting dismissal. These include:

> (1) the desirability of avoiding duplicative litigation, (2) the inconvenience of the domestic forum, (3) the governing law, (4) the order in which jurisdiction was obtained in each forum, (5) the relative progress of each proceeding, and (6) the contrived nature of the domestic claim.

*Hay Acquisition Co.*, 2005 WL 1017804, at *12.

Here, there are "extraordinary circumstances" warranting dismissal. First, dismissal will avoid duplicative litigation since the Austrian litigation is parallel. Even though the Vienna Court has not decided whether it will accept jurisdiction, it has clearly expended and will continue to expend significant resources in resolving the parties' dispute. Second, the Vienna Court obtained jurisdiction before this Court. Sail filed the Austrian Complaint on May 19, 2004, while IBSS filed this Complaint on September 29, 2004, and was not able to serve it until August 23, 2005.

Third, the Austrian proceedings have progressed farther than these proceedings. The Vienna Court has held hearings on January 10, January 21, and April 14, 2005, and several witnesses have been ex-amined. Brief in Support of Defendant's Motion to Dismiss, p. 6. IBSS argues that the Austrian litigation is still in its initial stages and that no depositions have been taken. Brief in Opposition to Defendant's Motion to Dismiss, p. 4. Even assuming that IBSS is correct, the Austrian litigation has still progressed further. Here, the first scheduling conference just took place on January 9, 2006, and little or no discovery has been undertaken.

Finally, there are no public policy concerns militating against dismissal. The Austrian legal system will permit IBSS to fully litigate its tort and contract claims. Dr. Schacherreiter's Report p. 8–17. IBSS generally alleges that it cannot obtain adequate relief in Austria. However, Austrian law recognizes contract and tort claims analogous to those asserted by IBSS. Dr. Schacherreiter's Report p. 15–16. Also, Austrian law provides many of the remedies available under American law, with the exception of punitive damages, but including expectation damages, lost profits, restitution, rescission and attorney's fees. Dr. Schacherreiter's Report p. 8–17. Comity considerations support dismissal.

### CONCLUSION

For the reasons set forth above, I recommend that the Motion to remand be denied. I also recommend that the Motion to dismiss be granted without prejudice, in the event the Commercial Court of Vienna, Austria, declines to accept jurisdiction over IBSS' claims.

Pursuant to Local Civil Rule 72.1(c)(2), the parties have ten (10) days from receipt of this Report and Recommendation to file and serve objections.

March 6, 2006.