**EDO CORPORATION, Plaintiff,**

v.

**NEWARK INSURANCE CO., et al., Defendants.**

**Civ. No. H–90–951 (AHN).**

United States District Court, D. Connecticut.

Dec. 9, 1992.

John B. Berringer and Jennifer A. Cohen, Anderson Kill Olick & Oshinsky, P.C., New York City, for plaintiff.

Louis B. Blumenfeld, Coney, Scully & Dowling, Richard Robinson, Sorokin, Sorokin, Gross, Hyde and Williams, P.C., Hartford, CT, Carl Pericone, Robert Joyce, Wilson, Elser, Moskowitz, Edelman & Dicker, Daniel Jordan, John J. Fitzgerald & Associates, Chicago, IL, Jack Genovese, West Hartford, CT, for defendants.

## RULING AND ORDER

SMITH, United States Magistrate Judge.

The defendants' motion to compel answers to interrogatories and production of documents (dkt. # 134) requests discovery of a variety of information which can be categorized as follows: (1) Documents made in connection with underlying claims for which the plaintiff, EDO, is presently seeking indemnification under its contracts for insurance ("underlying claims file"); (2) information regarding EDO's disposal, handling and transport of hazardous waste and chemicals; and (3) other interrogatories to which EDO initially interposed objections including the attorney-client privilege, attorney work product, vagueness, ambiguity, and irrelevance.

On November 23, 1992, EDO provided the defendants with supplemental objections and responses to defendant insurer's joint interrogatories. After reviewing plaintiff's supplemental responses, it appears that—with the exception of information pertaining to categories one and two—defendants' motion is now moot. Accordingly, the defendants' motion to compel is denied in part, without prejudice. To the extent that EDO's supplemental responses continue to be unresponsive, the defendants are free to file a renewed motion to compel with this court, provided such a motion is narrowed to eliminate matters no longer in dispute. However, for the reasons set forth below, the remainder of defendants' motion to compel is hereby granted and the plaintiff is ordered to produce

documents and answer interrogatories responsive thereto.

## DISCUSSION

The plaintiff, EDO, refuses to produce its underlying claims file regarding the events surrounding the Environmental Protection Agency ("EPA") action brought against EDO for its role in connection with environmental contamination at the Kellog–Deering site. EDO asserts both the attorney-client privilege and the work product doctrine as its basis for withholding this information. In response, the defendants maintain, *inter alia*, that even assuming that documents would qualify as either confidential attorney-client communications or attorney work product with respect to the EPA in the underlying action, they must nevertheless be disclosed to the defendants in the case at bar because: (1) EDO and its insurers shared a "common interest" in minimizing the costs incurred in the underlying action; and (2) EDO's implied duty of good faith and fair dealing, as well as its "duty to cooperate" provided under its various contracts for insurance, deprived EDO of a reasonable expectation that communications with, or work product of, its counsel made in connection with the underlying EPA action would remain confidential as to the defendant insurers.

The issue presently before the court is whether either the attorney client privilege or the work product rule permits an insured to withhold documents from its insurers when those documents were produced in connection with underlying litigation for which the insured now seeks indemnification.

■ Before resolving this question, it is essential to distinguish attorney-client privilege from the work product doctrine and determine whether state or federal law should be applied to each. Whether a federal court is sitting pursuant to its diversity or federal question jurisdiction, questions involving the work product doctrine

are governed by Fed.R.Civ.P. 26(b)(3) and the federal decisions interpreting it. *See Harper v. Auto Owners Ins. Co.*, 138 F.R.D. 655, 658 (S.D.Ind.1991) *citing Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). However, "[u]nder Fed.R.Evid. 501, where state law provides the rule of decision in a civil action, it is the state law of privilege which applies." *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 102 (S.D.N.Y.1986); Fed.R.Evid. 501. Since a federal court sitting in diversity must apply state law to privilege issues but federal law to those involving work product, this court will address the defendants' attorney-client and work product claims separately.

### I.

A definitive ruling on all of the complex choice of law issues presented by the instant case would be premature and unnecessary at this stage of the proceedings. In their memoranda, both the defendants and the plaintiff rely heavily upon conflicting Connecticut Superior Court decisions applying the attorney-client privilege to insurance coverage disputes similar to the one at bar. Because the party asserting the privilege, EDO, has failed to demonstrate that Connecticut's substantive law of attorney-client privilege differs materially from that of any other relevant jurisdiction,[1] this court will apply Connecticut law for the purpose of ruling on defendants' motion to compel.

■ Like federal courts, Connecticut adheres to the common law formulation of the attorney client privilege which states that "(1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected, (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived." *Rienzo v. Santangelo*, 160 Conn. 391, 395,

1. Indeed, the plaintiff "contends that the language of the policies, the underlying facts, extensive extrinsic evidence, and applicable law support the application of Connecticut law to

the policies." (Plaintiff's Supplemental Objections and Responses to Defendant Insurers' Joint Interrogatories at 12).

279 A.2d 565 (1971); *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.1964).

■ Only those communications disclosed by the client to the attorney with a *"reasonable expectation* of confidentiality" are privileged. *Carrier Corp. v. Home Insurance Co.*, No. 35–23–83, *slip op.* at 4, 1992 WL 139778 (Conn.Sup.Ct. June 12, 1992), *citing State v. Colton*, 174 Conn. 135, 138–39, 384 A.2d 343 (1977) (emphasis added).

■ Under both federal and Connecticut law, "[t]he burden of establishing attorney-client privilege, in all its elements, always rests upon the person asserting it." *U.S. v. Schwimmer* 892 F.2d 237, 242 (2d Cir. 1989); *State v. Hanna*, 150 Conn. 457, 465–66, 191 A.2d 124 (1963). Given that the Federal Rules of Civil Procedure favor liberal discovery and that the attorney-client privilege has the effect of barring relevant information, the privilege has been narrowly construed by courts. *United States v. Nixon* 418 U.S. 683, 710, 94 S.Ct. 3090, 1108, 41 L.Ed.2d 1039 (1974); *Weil v. Investment Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir. 1981).

Having determined that Connecticut's law of attorney-client privilege applies, the court is presented with a split of authority in Connecticut as to whether the attorney-privilege can be asserted to preclude discovery of an insured's underlying claims file in an insurance coverage dispute such as the one presently before this court.

In *Carrier Corporation v. Home Insurance Co.*, CV–35–23–83, 1992 WL 478585 (Conn.Sup.Ct. August 18, 1992), the court ruled that the attorney-client and work product rules do not foreclose discovery of an insured's underlying claims file in an action where the insured seeks indemnification from its insurers. In contrast, the court in *Reichold Chemicals v. Hartford Accident & Indemnity Co.*, CV–88–0351982 (Conn.Sup.Ct. Feb. 1, 1991), rejected the arguments advanced by the defendants in the present dispute and concluded that attorney-client privilege formed a sufficient basis for withholding discovery of an insured's underlying claims file. This court must now decide the appropriate path to follow.

■ When a state's law is unclear, a federal court sitting in diversity "must determine what result the state court would reach if the case had been brought in state court." *Brastex Corp. v. Allen International, Inc.*, 702 F.2d 326, 330 (2d Cir.1983). Because "the better reasoned, emerging, authorities favor a broad conception of discoverability and a narrow application of the attorney-client and work product rules in cases in which an insurer seeks documents and other evidence and information relating to the claims against its insured in a situation where the insured seeks coverage under its insurance contracts," *Carrier Corp.*, slip op. at 6, this magistrate judge concludes that the Connecticut Supreme Court, were it to resolve this issue, would rule that the attorney-client privilege does not foreclose discovery of an insured's underlying claims file.

In *Carrier Corp.*, the court based its decision to compel discovery of an insured's underlying claims file on, *inter alia*, the implied duty of good faith and fair dealing that exists in all contracts for insurance. *See Hoyt v. Factory Mutual Liberty Ins. Co.*, 120 Conn. 156, 159, 179 A. 842 (1935); *see also Magnan v. Anaconda Industries*, 193 Conn. 558, 566, 479 A.2d 781 (1984). As Judge Schaller stated:

> Given the fact that the insured is required to disclose to its insurer relevant information when it makes a claim for coverage under an insurance policy, and given the fact that the insured is required to deal in good faith with its insurers, the insured cannot, in good faith, entertain a *reasonable* expectation at the time the communication is made that the facts underlying those claims will not be disclosed to its insurer once a claim for coverage is made.

*Carrier Corp.*, slip op. at 9.

■ Relying on *Reichold*, EDO apparently argues that once an insurer denies coverage, it may use the attorney client privilege to shield from its insurer any communications with its counsel that were

made in connection with the underlying action. Denying insurance coverage, however, does not in and of itself affect the reasonableness of an insured's expectation of confidentiality. To hold otherwise would enable an insured to wield the attorney client privilege as a sword rather than a shield. *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir.1991). As Judge Schaller recognized:

> It should be kept in mind, however, that the plaintiff insured is demanding that the insurer be held liable on the insurance policy. If the plaintiff is successful, the insurer will be required to fulfill its contractual obligation to the insured. For that reason, an insurer does not forfeit its right to full and fair disclosure merely by denying liability under the policy and, further, the insured's expectation of confidentiality as to its insurer does not become reasonable once the insurer denies coverage if the insured continues to demand coverage under its contracts for insurance.

*Carrier Corp.,* slip op. at 11.

The burden, therefore, falls upon EDO to demonstrate that at the time communications concerning the underlying action were exchanged between EDO and its counsel, EDO entertained a reasonable belief that those communications were to remain confidential as to the defendant insurers. *Id.; See also Metro Wastewater Reclamation Dist. v. Continental Casualty Co.,* 142 F.R.D. 471 (D.Colo.1992) ("no showing by Metro that, at the time documents in question were generated, it had any intent or expectation that they would be concealed from its insurance carriers). Based upon EDO's explicit duty to cooperate with its insurers and its implied duty of good faith and fair dealing under its contracts for insurance, EDO cannot presently contend that it expected discussions with its attorneys regarding the underlying EPA action would remain confidential as to the defendants. Accordingly, the attorney-client privilege does not bar discovery of EDO's underlying claims file.

## II.

The work product rule operates as a privilege against discovery cloaking all documents prepared by a party, his representative or an attorney "in anticipation of litigation." *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Fed. R.Civ.P. 26(b)(3). As with all objections to discovery, the "burden of establishing that a document is work product is on the party who asserts the claim ..." *Hodges Grant & Kaufman v. U.S. Government,* 768 F.2d 719, 721 (5th Cir.1985). Among other things, the defendants contend that the EDO and its insurers share a "common interest" in reducing the amount of money ultimately paid out to claimants in the underlying proceedings. Accordingly, the defendants argue that documents which may constitute attorney work product with respect to the EPA or other claimants having interests adverse to those of EDO could not have been prepared in anticipation of litigation with EDO because there was no adversity between EDO and the defendants in connection with the underlying action.

Under the common interest doctrine, "communications between an insured and its attorney connected with the defense of underlying litigation are normally not privileged vis-a-vis the insured carriers in subsequent litigation." *Independent Petrochemical Corp. v. Aetna Cas. & Sur.,* 654 F.Supp. 1334, 1365 (D.D.C.1986). "[T]he common interest doctrine ... applies with equal force to claims of work product." *Metro Wastewater,* 142 F.R.D. at 478. The rationale for the common interest exception to the work product rule was articulated by the Illinois Supreme Court in *Waste Management, Inc. v. International Surplus Lines Ins. Co.,* 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991):

> It is essential to note that, until there is a declaration to the contrary, insurers continue to bear responsibility for settlement and litigation costs in the underlying action. The underlying defense litigation documents were generated in anticipation of minimizing liability, an interest common to both insurers and insureds. As we have previously stated, these documents may enjoy privileged status as to party opponents in the underlying litigation, but they cannot be privileged from insurers who may bear

the ultimate burden of payment. While the parties are now adverse concerning the issue of coverage, no such adversity exists as to the underlying litigation.

161 Ill.Dec. at 787, 579 N.E.2d at 335–36.

While several federal courts have declined to apply the common interest doctrine to the work product rule and have criticized the reasoning of *Waste Management* [2], those federal decisions which have recognized the common interest doctrine are more consistent with the work product rule under Fed.R. 26(b)(3). *See Metro Wastewater*, 142 F.R.D. at 478; *Independent Petrochemical Corp.*, 654 F.Supp. 1334 (D.D.C.1986); *Maryland Casualty Co. v. W.R. Grace*, 83 Civ. No. 7451 (S.D.N.Y. January 16, 1986).

■ To successfully assert the work product rule as a bar to discovery of the underlying claims file, therefore, EDO must demonstrate that its attorneys prepared these documents in anticipation of a lawsuit with the defendant insurers. After careful review of the parties memoranda and supporting affidavits, the court finds that prior to denial of coverage, EDO lacked a reasonable basis to anticipate litigation with the defendants. Where, as here, "the materials sought were produced at a time when the parties shared predominantly common, *nonadversarial* interests; when, indeed, the insured was under a duty to cooperate with the insurer in its defense of the underlying action; and when the insured was under a duty to disclose all relevant information to its insured [sic]," *Carrier Corp.*, slip op. at 13, the work product doctrine does not bar discovery of an insured's underlying claims file.

To the extent EDO claims that a document was prepared by its attorneys *after* it received notice that coverage would be denied, however, EDO may withhold such a document provided it supplies the defendants with a privilege log identifying each document withheld and providing a concise statement of the basis for its claim of work product immunity.

### III.

■ It is axiomatic that the party objecting to a discovery request bears the burden of demonstrating that discovery should not be allowed. *Eglin Federal Credit Union v. Cantor, Fitzgerald Secur. Corp.*, 91 F.R.D. 414, 419 (N.D.Ga.1981). With respect to discovery regarding EDO's disposal, handling, and transport of hazardous waste and chemicals, EDO has not satisfied its burden.

■ In objecting to discovery of material concerning waste disposal practices at EDO facilities other than those at issue in the case at bar, EDO relies primarily on *Borg Warner Corp. v. Liberty Mutual Ins. Co.*, Index No. 88–539 (Sup.Ct. of N.Y. June 20, 1990). Rather than establishing a basis for EDO's refusal to comply with the defendant's requests, *Borg–Warner* undermines EDO's position and supports the defendants'. In *Borg–Warner*, the court ruled that general corporate knowledge regarding environmental hazards "is relevant because what is in part at issue in this case is Borg–Warner's expectations and intentions concerning waste disposal practices and methods that released products and waste products into the environment." *Borg–Warner*, Transcript at 35. The court then ordered Borg–Warner to produce, in addition to site-specific information, the company's general, corporate-wide waste disposal and handling practices and information which the company produced to waste haulers, recycling, treatment or disposal operators for the specific wastes underlying its liability.

EDO's intent regarding its knowledge of environmental hazards and waste disposal practices may be in issue. In light of *Borg–Warner*, the court concludes that information pertaining to EDO's knowledge and practices at facilities other than Elinco is relevant to EDO's intent and is reasonably calculated to lead to the discovery of admissible evidence. Therefore, the court orders EDO to provide answers and documents responsive to the defendants' requests.

---

2. *See Reichold, supra, slip op.* at 62; *Remington Arms Co. v. Liberty Mutual Ins. Co.*, 142 F.R.D. 408 (D.Del.1992) (a pre-*Carrier–Corp.* decision applying *Reichold*); *Bituminous Casualty Corp.* *v. Tonka Corp.*, 140 F.R.D. 381 (D.Minn.1992); *North River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363 (D.N.J.1992).

## CONCLUSION

For the reasons stated above, the defendants' motion to compel (dkt. #134) is granted in part and denied in part, without prejudice. The plaintiff is hereby ordered to answer interrogatories and comply with document requests consistent with this court's ruling.

This is not a recommended ruling but a ruling on discovery, the standard for review of which is specified in 28 U.S.C. § 636; Fed.R.Civ.P. 6(a), 6(e) and 72; and Rule 2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the court unless reversed or modified by the district judge upon motion timely made.

