**McDOWELL OIL SERVICE, INC., Plaintiff,**

v.

**INTERSTATE FIRE AND CASUALTY COMPANY, Defendant.**

No. 3:CV–92–699.

United States District Court, M.D. Pennsylvania.

March 25, 1993.

. Steven E. Angstreich, Levy, Angstreich, Finney, Mann & Burkett, P.C., Philadelphia, PA, for plaintiff.

Mitchell S. Pinsly, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, PA, for defendant.

**MEMORANDUM**

McCLURE, District Judge.

## BACKGROUND

This declaratory judgment action was originally filed on May 28, 1991 in the Court of Common Pleas of Snyder County, Pennsylvania to Civil No. 154 of 1991. Plaintiff McDowell Oil Service, Inc. ("McDowell") sued its insurance carriers, defendants Northbrook Property and Casualty Insurance Company ("Northbrook"), Reliance Insurance Company ("Reliance"), Interstate Fire and Casualty Company ("Interstate") and Federal Mutual Insurance Company ("Federated") to obtain a declaration of insurance coverage.

The case was removed to this court pursuant to a notice of removal filed by Interstate on May 22, 1992.[1] 28 U.S.C. §§ 1332, 1441, and 1446. Plaintiff filed a motion to remand to state court for lack of complete diversity (Record Document No. 3) which the court denied in an order dated October 22, 1992 (Record Document No. 14).

McDowell filed this action to gain assurance of coverage for claims asserted in a consolidated class action filed against it and other defendants in Snyder County by residents of the Snyder County village of Kreamer for alleged personal injury and property damage.[2] The class action plaintiffs alleged that the activities of McDowell and others were responsible for the contamination of the Kreamer municipal water supply with gasoline and other contaminants during the winter of 1984–85 as a result of leaks from underground storage tanks owned or maintained by the various defendants. (See: (Record Document No. 1, exhibit 1, paras. 25–49)

The class action plaintiffs settled their claims against McDowell pursuant to a stipulation and agreement of settlement dated April 8, 1992. The settlement agreement was approved by the Court of Common Pleas

---

1. Interstate filed an amendment to its notice of removal on July 7, 1992 (Record Document No. 4).

2. The underlying class action suits and various actions filed by individual plaintiffs based on the same subject matter were consolidated as *In re:*

*Kreamer Municipal Well Litigation,* Snyder County Master File No. 336–1985 (asserting property damage claims) and *In re: Kreamer Municipal Well Litigation,* Snyder County Master File No. 268–1986 (asserting personal injury claims).

of Snyder County, the Honorable Jay W. Myers, S.J., Specially Presiding, in an order dated April 21, 1992.[3] McDowell's share of the settlement was funded, at least in part, by Northbrook and Reliance pursuant to separate confidential settlement agreements. The class action settlement agreement further provided that McDowell transferred and assigned to the class action plaintiffs all rights, claims, causes of action, etc., which it held against Interstate, with the result being that McDowell's interest in this action has been assigned to, and is now being litigated by counsel for, the representative plaintiffs in the underlying class action, John and Mary Kay McLaughlin.[4] (See: Record Document No. 1, exhibit "B", pp. 20–23) Following issuance of the April 21, 1992 order approving settlement of the underlying class action claims against McDowell, the instant action was removed to this court.

Subsequent to removal, plaintiff's claims against Northbrook, Reliance, and Federated were dismissed with prejudice pursuant to a stipulation of dismissal dated December 7, 1992 (Record Document No. 24). Plaintiff's claims against Interstate remain.

Based on the allegations against McDowell in the underlying environmental class actions, plaintiff asserts an obligation on the part of Interstate to pay defense costs incurred in the two underlying class action suits.

Plaintiff's claims against Interstate are based on two commercial umbrella liability insurance policies issued to McDowell. The first (Policy No. 55C–0028806) was issued for the period from March 1, 1984 to March 1, 1985 (hereafter "1984–85 Interstate policy"). The second (Policy No. 55C–0031374) was issued for the period from March 1, 1985 to March 1, 1986 (hereafter "1984–85 Interstate policy"). Both policies provided excess coverage for claims in excess of the policy limits of McDowell's primary coverage with Northbrook (in the case of the 1984–85 policy) and McDowell's primary coverage with Reliance (in the case of the 1985–86 policy). (See: (Record Document No. 1, exhibit 1, paras. 133–54).

Plaintiff seeks to recover necessary defense costs incurred 1) in connection with the investigation and work plan, including costs required to gain access to adjacent properties; and 2) in connection with the cleanup of the site conditions as determined by the investigation and work plan to the extent that Northbrook and/or Reliance are not obligated to pay such costs.

Interstate denies coverage on several grounds. It denies receiving timely notice of the claim or the underlying actions. It states, in its answer, that "it advised plaintiff upon receipt of notice of the action ... that any compensatory award in excess of coverage limits would be the personal responsibility of plaintiff, that punitive damages are not covered under the policy in question, and that the right to disclaim coverage and indemnification is reserved for claims outside the scope of the policy coverage and policy period." (Record Document No. 1, exhibit 4, para. 151)

It disputes coverage under the policy, stating that it advised plaintiff "upon receipt of notice of the action in question that the existence of an occurrence or property damage during the policy period in question was questionable, that whether civil penalties and the cost of clean-up constituted property damage was questionable, that the right to disclaim coverage was thus reserved, and that no liability under the policy in question attaches to answering defendant until the amount of the underlying limits of insurance coverage have been paid by or on behalf of the insured." (Record Document No. 1, exhibit 4, para. 151.) Interstate states as well that it "declared a full and complete reservation of its rights under the policy in question and denied waiver of any rights hereunder or under any law or statute ... Thus ... effectively reserv[ing] all of its rights to disclaim coverage under the policy in question for all

---

3. Copies of the state court order of April 21, 1992, and the settlement agreement are attached to Interstate's notice of removal (Record Document No. 1, filed May 26, 1992) as exhibits "A" and "B" respectively.

4. To avoid unnecessary confusion, we will simply refer to the assignees as plaintiff or McDowell throughout this memorandum.

pollution-related claims set forth in all of the underlying actions at issue." (Record Document No. 1, exhibit 4, para. 152)

It stated as well that it "advised plaintiff upon receipt of notice of the actions in question that Endorsement No. 1, entitled 'Pollution Endorsement—Absolute,' excludes coverage for any pollution-related claims for the policy period in question and that punitive damages are also not covered." (Record Document No. 1, exhibit 4, para. 153)

Plaintiff concedes that Interstate notified it that it reserved the right 1) to disclaim coverage and indemnification for property damage claims (Snyder County Master File No. 336–1985) outside the scope of the policy and the coverage period; 2) to decline coverage for claims asserted in Snyder County Civil No. 11–1990 related to the issue of whether there was an occurrence or property damage resulting from an occurrence as defined in the policy; and 3) to decline coverage under the 1985–86 policy for claims asserted in Snyder County Civil Nos. 336–1985 and 11–1990 based on Policy Endorsement No. 1 ("Pollution Endorsement—Absolute"). (Record Document No. 1, exhibit 1)

Before the court are: 1) Interstate's motion to compel plaintiff to answer interrogatories pursuant to Fed.R.Civ.P. 37(a) and requests for production of documents (Record Document No. 10); and 2) plaintiff's motion (Record Document No. 23) for reconsideration of the court order dated October 22, 1992 denying plaintiff's motion to remand this action to state court.

For the reasons set forth below, the court will grant plaintiff's motion for reconsideration and remand the action to state court. Accordingly, the court will take no action on the pending motion to compel, deferring that and all other discovery issues to the state court.

### Motion for reconsideration

■ A motion for reconsideration is governed by the Rule 59(e) standards governing a motion to alter or amend a judgment. Such a motion must rely on at least one of three grounds: (1) intervening change in controlling law; (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice. *Atkins v. Marathon LeTourneau Co.,* 130 F.R.D. 625, 626 (S.D.Miss. 1990) and *Natural Resources Defense Council, Inc. v. U.S. E.P.A.,* 705 F.Supp. 698, 702 (D.D.C.), *vacated on other grounds,* 707 F.Supp. 3 (1989). "With regard to the third ground, the Court cautions that any litigant considering bringing a motion to reconsider based upon that ground should evaluate whether what may seem to be a clear error of law is in fact simply a point of disagreement between the Court and the litigant." *Atkins, supra,* 130 F.R.D. at 626. Moreover, a Rule 59(e) motion is not to be used as a means "to reargue matters already argued and disposed of" by prior rulings "or to put forward additional arguments which it could have made but neglected to make before judgment." *Davis v. Lukhard,* 106 F.R.D. 317, 318 (E.D.Va.1984), *judgment vacated on other grounds,* 788 F.2d 973 (4th Cir.1986).

Although plaintiff's motion for reconsideration does not rely upon any of the three grounds which are a proper basis for a Rule 59(e) motion, we will, nevertheless, address the grounds raised. Plaintiff's motion raises two issues, only one of which is new. It disputes this court's choice of precedent on the non-diversity issue and raises, for the first time, the argument that the court should decline to exercise jurisdiction under the Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201–2202.

For the reasons discussed below, we decline to reconsider our ruling on the non-diversity issue, but will consider, for the first time, plaintiff's contention that we should decline to exercise our jurisdiction under the DJA.

### Plaintiff's motion to deny removal on non-diversity grounds

For the reasons stated in our memorandum dated October 22, 1992 denying plaintiff's motion to remand on diversity grounds, we stand by our ruling that removal was not defective because of the existence of nondiverse defendants. See: *Lesher by Lesher v. Andreozzi,* 647 F.Supp. 920 (M.D.Pa.1986) (Caldwell, J.). Plaintiff has raised no new issue and cited no new authority or newly-learned facts in support of its motion for

reconsideration of the court's ruling on that issue. Its request for reconsideration on that issue consists solely of a recapitulation of the arguments stated earlier and which the court rejected in its memorandum dated October 22, 1992. We will, therefore, deny plaintiff's motion for reconsideration of our ruling on that issue.

### Timeliness of motion to remand

Plaintiffs' failure to raise the matter of the court's discretionary right to decline jurisdiction under the DJA until the filing of its motion for reconsideration dated December 4, 1992 raises an issue as to the timeliness of a request for remand on that basis. Interstate's notice of removal was filed May 22, 1992.[5] McDowell filed a motion for remand on June 22, 1992, thirty days after the date of removal. McDowell's motion for reconsideration of the court's order dated October 22, 1992 denying its motion for remand was filed December 4, 1992. The lateness of McDowell's motion for reconsideration brings into question whether the court can consider arguments raised for the first time in its motion for reconsideration.

Remand of cases removed from state court is governed by 28 U.S.C. § 1447(c)[6]. Section 1447(c) was amended in 1988 to establish a thirty-day deadline for filing a motion to remand the case on the basis of a "defect in removal procedure". All such motions must be filed within thirty days after the notice of removal, or the alleged defect is waived. Motions to remand for lack of subject matter jurisdiction are not expressly excluded from the thirty-day post-removal litigation period, and may be filed at any time before entry of final judgment. 28 U.S.C. § 1447(c).

Section 1447(c) seems clearly to apply the thirty-day limit only to motions for remand based "on any defect in removal procedure," and thus would not apply to a motion such as the one before us, based on an alleged discretionary right to decline jurisdiction. However, ambiguous legislative history has tended to cloud the clarity of the statute.

This uncertainty was settled by the Third Circuit's ruling in *Foster v. Chesapeake Ins. Co., Ltd.,* 933 F.2d 1207, 1213 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991). In *Foster, supra,* the court held that the statute was clear on its face, and that the thirty-day time limit did not apply to a motion for remand based on a forum selection clause.[7] The court held that motions for remand not based on an alleged defect in the removal procedure may be filed beyond the thirty-day post-removal period. The court cautioned, however, that the time for filing such motions is not unlimited. The district court may, in the exercise of its discretion, "deny as untimely a non-procedural-defect, non-jurisdictional motion to remand if made at an unreasonably late stage of the federal litigation." *Id.* at 1213 n. 8. Accord: *Melahn v. Pennock Insurance, Inc.,* 965 F.2d 1497, 1502–03 (8th Cir.1992) (thirty-day limit not applicable to motion for remand based upon abstention). Cf. *In re Shell Oil Co.,* 932 F.2d 1518, 1522 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992) (thirty-day limit applies to all motions for remand not based on subject matter jurisdiction).

Based on the foregoing, it is clear that the new ground for remand asserted in plaintiff's motion for reconsideration is time-barred only if we find that it was filed at an "unreasonably late stage" of the federal litigation. The motion for reconsideration was filed about 6½ months after the notice of

---

5. The action was commenced in state court on May 28, 1991.

6. **§ 1447. Procedure after removal generally**
   (c) A motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case.
   28 U.S.C. § 1447(c).

7. Compare: *Air–Shields, Inc. v. Fullam,* 891 F.2d 63 (3d Cir.1989) (District court had no authority to remand based on an alleged procedural defect asserted in a motion filed beyond the thirty-day deadline.)

removal, while the case was still in the discovery stage. We do not consider that delay so significant as to warrant a finding that the motion was filed "unreasonably late". We will, therefore, consider the new ground asserted by plaintiffs for remand on its merits.

### Discretionary claims under the Declaratory Judgment Act

This brings us to the question of whether plaintiff has asserted a valid basis for remand. Defendant argues that this court cannot entertain a motion to remand on nonstatutory grounds. It contends that the only bases upon which this court can order a remand to the state court are those stated in the statute, i.e. for lack of subject matter jurisdiction or a defect in the removal procedure.

The line of cases which defendant cites for this principle is not followed by the Third Circuit. Defendant relies on the United States Supreme Court decision in *Thermtron Products, Inc. v. Hermansdorfer,* 423 U.S. 336, 345, 96 S.Ct. 584, 590, 46 L.Ed.2d 542 (1976) and subsequent federal decisions applying that ruling, *Ryan v. State Board of Elections,* 661 F.2d 1130, 1134 (7th Cir. 1981)[8] and *Kirkbride v. Continental Casualty Company,* 933 F.2d 729 (9th Cir.1991).

Not only has the Third Circuit declined to follow the line of authority upon which defendant relies, it has held that that portion of the *Thermtron, supra,* ruling which defendant uses as the cornerstone of its argument was overruled by *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

In *Foster, supra,* 933 F.2d at 1214, the Third Circuit held: "*Cohill* clearly overruled Thermtron to the extent that Thermtron had held that only statutory grounds for remand are authorized." The court explained its reasoning as follows:

> ... *Thermtron* contained absolute language to the effect that the *only* grounds available for remand are those specified by section 1447(c). See 423 U.S. at 345 [96 S.Ct. at 590].... Twelve years later, however, in *Cohill,* 484 U.S. 343 [108 S.Ct. 614] the Court found that the language in *Thermtron* "loses controlling force when read against the circumstances of that case." *Id.* at 355 [108 S.Ct. at 621] "The *Thermtron* decision," which, again, involved the *sua sponte* remand of a removed diversity action because of the congested state of the district court's docket, "was a response to a clearly impermissible remand, of a kind very different from that at issue here." *Id.* at 356 [108 S.Ct. at 621] In *Cohill* the district court remanded the pendent claims remaining in a removed federal question case once the federal question counts of the complaint had been eliminated. It had already been settled that once such a situation presented itself the district court could, in the exercise of its discretion, *dismiss* the remaining pendent claims. The *Cohill* court took this rule a step further and concluded that

> a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

---

**8.** The Seventh Circuit has since disavowed the interpretation of *Thermtron* endorsed in *Ryan, supra.* In *Rothner v. City of Chicago,* 879 F.2d 1402 (7th Cir.1989) the court stated:

> the [*Cohill*] Court in effect held, contrary to *Thermtron,* that § 1447(c) does not contain all of the permissible grounds for remand.

879 F.2d at 1406. The dissent in *Rothner* summarized the law in a formula with which the majority opinion in Rothner was in accord, stating;

> *Cohill* left us with three categories of grounds for remand: (1) those authorized by § 1447(c)

and beyond the power of appellate review; (2) those not authorized by s 1447(c) but nonetheless lawful in principle and reviewable for error in execution (the example from [*Cohill*] is a remand of a pendent state claim after deciding the federal claim that authorized the removal); (3) those not authorized by s 1447(c) or anything else, and subject to automatic reversal (the example from *Thermtron* is a remand of a suit the district court thinks it is too busy to hear).

*Id.* at 1420. See: *Foster, supra.* 933 F.2d at 1215.

Such discretion is precluded neither by the removal statute nor by our decision in *Thermtron. Id.* [423 U.S.] at 357 [96 S.Ct. at 596].

*Foster, supra,* 933 F.2d at 1214–15.[9] Accord: *Corcoran v. Ardra Ins. Co.,* 842 F.2d 31, 36 (2d Cir.1988) (Abstention is a legitimate, non-section 1447(c) ground for remand.).

### Declaratory Judgment Act

■ In this circuit, district courts have considerable discretion in deciding whether to exercise jurisdiction over claims asserted under the DJA.[10] *United States v. Commonwealth of Pennsylvania, Department of Environmental Resources, (U.S. v. PaDER),* 923 F.2d 1071, 1074 (3d Cir.1991). The Act confers on federal courts the power to determine the rights and "legal relations" of interested parties seeking such a ruling, but does not make the exercise of that power mandatory. *Step–Saver Data Systems, Inc. v. Wyse Technology, Inc.,* 912 F.2d 643, 646–47 (3d Cir.1990). The burden of proof is on the movant to demonstrate that dismissal or remand is appropriate. *Remington Arms Co. v. Liberty Mutual Insurance Co.,* 748 F.Supp. 1057, 1062 (D.Del.1990).

Decisions to exercise or decline jurisdiction under the DJA are governed by a set of guidelines derived from United States Supreme Court and Third Circuit precedent. The Third Circuit summarized the guidelines and the basis for their derivation in *U.S. v. PaDER,* 923 F.2d at 1075, stating:

> In *Brillhart v. Excess Ins. Co.,* 316 U.S. 491 [62 S.Ct. 1173, 86 L.Ed. 1620 (1942) . . ., the Supreme Court provided guidance for the exercise of this discretion. There the district court had granted a motion to dismiss for the reason that a related case was currently pending in a state court without inquiry into the adequacy of the state forum to decide the respondent's claims. On review, the Supreme Court determined that an evaluation of the adequacy and reach of the state court proceeding was critical, suggesting 'inquiry into the scope of the pending state court proceeding and the nature of defenses open there.' *Id.* at 495 [62 S.Ct. at 1176] The central question is whether the controversy may 'better be settled' in the state court and this may entail consideration of whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceeding. *Id.* As the Supreme Court makes clear in *Brillhart* the mere existence of a related state court proceeding does not end the inquiry, rather the question of the adequacy of that state court proceeding remains.

*Id.* at 1075 (Citations and footnotes omitted.)

The Third Circuit added to the *Brillhart* test other factors derived from Third Circuit precedent:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation; and
>
> (4) the availability and relative convenience of other remedies.

*Id.* at 1075, citing *Terra Nova Insurance Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1224 (3d Cir.1989) and *Bituminous Coal Operators' Assoc., Inc. v. International Union, United Mine Workers of America,* 585 F.2d 586 (3d Cir.1978). Accord: *National Union Fire Insurance Company of Pittsburgh v. Freeport–McMoRan, Inc.,* 767 F.Supp. 568, 571 (D.Del. 1991).

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

---

9. In *Foster, supra,* the Third Circuit rejected earlier Third Circuit decisions to the contrary, *Cooley v. Pennsylvania Housing Finance Agency,* 830 F.2d 469 (3d Cir.1987), and *Levy v. Weissman,* 671 F.2d 766 (3d Cir.1986), stating that they were decided pre-*Cohill, supra. Foster, supra,* 933 F.2d at 1215, n. 12.

10. The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides, in relevant part:

*Discretionary factors*

■ Here, although there is no case currently pending before the Court of Common Pleas of Snyder County which raises issues identical to those presented in this case, there is and has been a series of related cases pending before the Court of Common Pleas of Snyder County since approximately 1986. The instant action centers entirely on Interstate's alleged obligation as McDowell's excess insurer to fund the settlements which McDowell negotiated with class action plaintiffs in the two class actions for personal injury and property damage which were filed against it in 1986 in the Court of Common Pleas of Snyder County. Both underlying cases involved a multiplicity of issues. Both were pending for a number of years before McDowell settled with the plaintiffs. Both involved exclusively state law issues, and both were litigated in Snyder County.

All of the issues presented are governed by Pennsylvania law.[11] The principal issues, as framed by the pleadings, are: 1) whether Interstate received timely notice of the underlying class actions for which plaintiff seeks to recover and of McDowell's claim under its two umbrella policies; and 2) whether McDowell's policies with Interstate cover the claims asserted by the class action plaintiffs in the two underlying actions—i.e. whether the alleged leakage of gasoline from underground storage tanks constitutes an occurrence for which the policies afford coverage and whether the events triggering coverage, if coverage is found to exist, occurred during the policy periods. (See pp. 540–541 *supra*.)

The issues presented by this case are inextricably intertwined with the merits of the claims asserted by the class action plaintiffs in the two underlying actions which were litigated from 1986 to 1992 in the Court of Common Pleas of Snyder County. Litigating those claims before a state court judge already intimately familiar with the intricacies of these much litigated underlying actions will allow for a much more expeditious resolution of this action.[12] See generally: *Foster*, *supra*, ("[I]n giving effect to a forum selection clause by remanding rather than dismissing a case, concerns of economy and convenience are promoted.") Even the attorney-client privilege asserted in opposition to defendant's motion to compel is governed by state law. *Edo Corporation v. Newark Insurance Co.*, 145 F.R.D. 18 (D.Conn.1992); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 102 (S.D.N.Y.1986) and Fed.R.Evid. 501.

State courts have a particularly compelling interest in deciding issues raised in a declaratory judgment action if the action is governed solely by state law. *Mitcheson v. Harris*, 955 F.2d 235, 238 (4th Cir.1992). Not only do federal courts lack a compelling interest in deciding issues of state law, the federal courts' role in shaping state law is one which some judges have advocated should be limited. Federal courts' unnecessary forays into state law erode the "state courts' sovereign right and duty to develop state law". Delores K. Sloviter, *A Federal Judge Views Diversity Jurisdiction Through the Lens of Federalism*, 78 Va.L.Rev. 1671 (1992).

If jurisdiction is relinquished, issues governed exclusively by state law will be decided by a state court, promoting an important state interest. Conversely, retaining federal jurisdiction serves no compelling federal purpose. See: *Hartford Accident & Indemnity Co. v. Hop-on International Corp.*, 568 F.Supp. 1569, 1573–74 (S.D.N.Y.1983).

**11.** As discussed above, Pennsylvania law clearly governs the disposition of all issues in this case. Both Interstate policies were issued in Pennsylvania. McDowell was a Pennsylvania corporation, and all relevant events occurred in the Commonwealth. The alleged gasoline leak occurred in Kreamer, Snyder County, Pennsylvania. All plaintiffs in the underlying state class action suits are Pennsylvania residents. No other state has any connection with any event related to this action. *Griffith v. United Air Lines*, 416 Pa. 1, 203 A.2d 796 (1964).

**12.** Although both underlying actions were pending before this judge for a period of time before assuming the federal bench, this judge has had no involvement in either action during the past three years—the critical period for purposes of assessing the reasonableness of the settlement which McDowell negotiated with the class action plaintiffs.

State court proceedings are adequate for resolving the dispute. There has been no suggestion by the parties that the Pennsylvania courts cannot or will not adequately determine and protect the rights of the parties, or that any impediment exists which prevents either party from asserting all claims and defenses available to it in state court.

Convenience of the parties does not weigh in favor of either court. The federal courthouse where this action is currently pending is approximately sixty miles from the county courthouse where this action would be tried if remanded to state court. This court cannot conceive of any scenario under which it would make any material difference to the parties from the standpoint of convenience if this action were litigated in state or federal court. The public interest is also unaffected by the choice of forum.

We emphasize that a number of factors distinguish this case from the traditional declaratory judgment action. In addition to the distinguishing factors discussed above, this action was pending in state court for nearly one year and was removed to this court only after the impediment to complete diversity was removed by the non-diverse defendant's settlement with the other three carriers initially named as defendants. The damages which plaintiff seeks include costs incurred by McDowell in determining the extent of possible contamination and assessing and responding to the threat of further contamination of water sources. As this court well knows from its involvement in prior toxic tort actions, these issues turn on the assessment of detailed geological and hydrogeological data and expert analysis of the data presented. Much of this information has undoubtedly been presented to, and assimilated by, the state court judge in overseeing this action and the underlying class actions. In all probability the state court has also ruled on various aspects of the same issues which we would be asked to decide. To the extent that collateral estoppel would not bar the parties from litigating or relitigating those issues before this court, we create the risk of ruling in a manner inconsistent with prior rulings of the state court— a risk particularly inappropriate in a case such as this grounded solely on diversity jurisdiction and governed entirely by state law. See: Sloviter, *supra.* The myriad distinctions between this case and the average declaratory judgment action make the case for remanding this action to state court particularly compelling.

This decision should not be construed as endorsing remand or dismissal of declaratory judgment actions in every case in which an insurer seeks a declaration of coverage responsibilities in a pending state action. Obviously, remand or dismissal is not appropriate in every case. The circumstances of this case are unique. Few cases present such a clear-cut case for federal forbearance.

■ Finally, we emphasize that this decision is grounded in the court's discretionary right to decline jurisdiction under the Declaratory Judgment Act, not on abstention grounds. Reliance on abstention grounds is inappropriate if the case before the district court is a declaratory judgment action and a pending state court action presents the same issues. In such cases, the Third Circuit has held, the district court should not utilize the "exceptional circumstances" test of the *Colorado River* [13] abstention doctrine, but should rely instead on the principles governing discretionary actions under the DJA. *Terra Nova, supra.* A district court's discretion to dismiss a case filed under the Declaratory Judgment Act is much broader than that afforded under *Colorado River* abstention. Whereas, "[o]nly the clearest of justifications will warrant dismissal on abstention grounds", *Colorado River, supra,* 424 U.S. at 819, 96 S.Ct. at 1247, a much less stringent standard applies to the court's declination of jurisdiction on discretionary grounds under the DJA. *United States v. Commonwealth of Pennsylvania Department of Environmental Resources,* 923 F.2d 1071, 1074 (3d Cir.1991) and *National Union Fire Insurance Company of Pittsburgh, Pennsylvania*

---

**13.** *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236,  1246, 47 L.Ed.2d 483 (1976).

*v. Freeport–McMoRan, Inc.,* 767 F.Supp. 568, 570 (D.Del.1991).

For all of these reasons, we will decline to exercise discretionary jurisdiction over the claims asserted in this action and remand this action to state court. Although this action differs from the traditional case in which federal courts decline to exercise jurisdiction under the Declaratory Judgement Act, in that there is no parallel action involving the same claims currently pending in state court, we conclude that is not an impediment to remanding the case. There is no reason why we should refrain from applying the same principles in this case as in those in which the parties seek dismissal on the basis of a parallel action pending in state court. See generally: *Corcoran, supra,* 842 F.2d at 36 ("[I]f a district court has the power to dismiss an action on grounds of abstention it has the power to remand to the state court on those grounds.") We will, therefore, enter an order remanding this action to state court.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (Record Document No. 23) filed by plaintiff McDowell Oil Service, Inc. for reconsideration of the court order dated October 22, 1992 is granted to the extent of the relief provided in this order and in the accompanying memorandum.

2. This action is remanded to the Court of Common Pleas of Snyder County, Pennsylvania.

3. Interstate's motion to compel plaintiff to respond to discovery (record document no. 10) is referred to the state court for disposition.

4. The Clerk of Court is directed to close this case and to send a copy of this order and the accompanying memorandum to the Court of Common Pleas of Snyder County and to send all originals in the file to the Court of Common Pleas of Snyder County.